## Izette Shaw and another, executors of Abram Shaw, *vs.* N. Gookin.

G. holding a note against S. drew an order upon him for a certain sum in favor of I. S., which order was accepted by S. and the amount endorsed upon the note. Although the order was never paid by S., yet as it did not appear that it had ever returned to the hand of G. it was held to be payment, pro tanto, of the note.

G., the master of a ship belonging to S., of Portsmouth, in this State, sailed on a voyage to Virginia, thence to France, and back to the United States. After the ship arrived at Virginia and was chartered on a voyage to Bordeaux, S. died, and his executor wrote to G., directing him to pursue the voyage, and pay to himself a debt due to him from S. out of the first earnings of the ship. The estate turned out to be insolvent, and it not appearing that the executor was aware of this when he wrote to G., it was held that G. could not retain the amount of the said debt against the executor.

In an action by an executor to recover a debt which has accrued to him as such after the death of his testator, a debt due to the defendant from the testator is not a set-off.

The master of a ship has no lien upon its earnings as a general creditor.

Assumpsit. The first count was upon an account annexed to the writ. The second count was for money had and received. The cause was submitted to an auditor, who reported the following facts.

On the 25th of August, 1829, the defendant sailed from Portsmouth, in this State, as master of the ship Izette, be-

longing to Abram Shaw, on a voyage to Virginia, thence to France, and back to the United States. The ship arrived below Richmond, in Virginia, on the 2d September; was chartered on a voyage to Bordeaux on the 7th September; commenced loading on the 9th October, and on the 4th November, 1829, was loaded and on her way down James River, when the defendant received a letter from William Shaw, one of the plaintiffs in this case, advising him of the death of Abram Shaw, on the 14th October, and directing him to employ the ship to the best advantage, and apply the first earnings to discharge the debts due to himself and to R. & W. Pulsford.

The voyage was pursued, and the ship returned to Baltimore in June, 1830. Gookin, the defendant, remitted to the Pulsfords three thousand francs, and retained in his own hand $1049 05, the balance due on a note given him by Abram Shaw on the 12th June, 1828, for $1304 34, payable on demand with interest; and this suit is brought to recover the sum of $1049 05 so retained in the hands of the defendant.

The defendant filed the note given him as aforesaid by Abram Shaw, as a set-off in this case.

On the 25th August, 1828, the defendant drew an order upon Abram Shaw for $220, in favor of Thomas Shaw, to be paid on the 16th September, 1828, to be endorsed on the said note. This order was accepted by Abram Shaw, and on the 16th September, 1828, the amount of the order was endorsed upon the note; but the order has never been paid.

Abram Shaw's estate is administered in the insolvent course, and is in fact insolvent.

*Bartlett*, for the defendant, contended that the letter of William Shaw, one of the plaintiffs, directing the defendant to complete the voyage and pay himself, gave him a right to retain in his hands the amount of the note.

But however this may be, he had a lien on the earnings

of the ship, and a right to retain them until the note was paid.    4 *Mass. R.* 91, *Lane* vs. *Penniman;* 11 do. 72, *Lewis* vs. *Hancock;* 2 *Caine's Rep.* 77; 1 *Peters' Admiralty Rep.* 223; 1 *Cowper* 251; 1 *Burrow* 494; 2 do. 931; 3 *B. & P.* 485; 1 *D. & E.* 112 and 285; 2 *East* 227; 3 *Cranch* 158.

The order accepted but not paid, is not payment on the note, although endorsed.

*E. Cutts* for the plaintiffs.    The direction which William Shaw gave to the defendant to pay himself out of the earnings of the ship, was given under a misapprehension.    He was not then apprised that Abram Shaw's estate was insolvent, and the direction must be laid out of the case.    17 *Mass. R.* 380, *Walker* vs. *Hill;* 3 *Pickering* 261, *Walker* vs. *Bradley;* 3 *M. & S.* 344, *Cox* vs. *Prentiss;* 15 *Mass. R.* 207; 8 *John.* 120.

The defendant had no lien upon the freight for the note. All liens for services in previous voyages were dissolved by taking the note.

The acceptance of the order by A. Shaw was, under the circumstances, payment pro tanto of the note he gave to the defendant.

RICHARDSON, C. J. delivered the opinion of the court.

The order drawn by the defendant in favor of T. Shaw upon the testator and by him accepted, must, under the circumstances, be considered as a payment of the note the defendant holds, pro tanto.    The estate of the testator is liable to T. Shaw.    If the defendant now had the order the case might be different.    3 *Starkie's Ev.* 1089; 4 *Esp. N. P. C.* 159, *Dangerfield* vs. *Wilby;* 5 *D. & E.* 517, *Richardson* vs. *Rickman.*

But can the defendant avail himself of that note as a set-off against the claim of the plaintiffs in this case, or has he

a right to retain the money sought to be recovered in this case in satisfaction of that note?

When an executor sues for a debt which has accrued to him since the death of the testator, it is settled that the defendant cannot set-off a debt due to him from the testator, for this would alter the course of distribution. *Willes* 103, *Shipman* vs. *Thompson; 4 John. C. R.* 13; *Willes* 264, note (a. ;) *Buller's N. P.* 180; 1 *Bingham* 93, *Rogerson* vs. *Ladbroke; 2 N. H. R.* 419 and 479.

In this case, when the defendant received the freight after the death of the testator, a debt accrued to the plaintiffs as executors; and it is clear that the note cannot be received as a set-off to such a debt. The defendant cannot then avail himself of the note as a defence in this case, unless it was a lien upon the freight he received.

The direction of William Shaw to the defendant to pursue the voyage, and pay himself out of the first earnings of the vessel, does not alter the law of the case; because it does not appear that W. Shaw then knew that the estate was insolvent.

In England, the captain of a ship has no lien upon the ship for wages—*Douglas* 101, *Wilkins* vs. *Carmichael;* nor for money expended or debts incurred by him for repairs on the voyage—9 *East* 426, *Hussey* vs. *Christie;* nor has he any lien on the freight for his wages or for his disbursements on account of the ship during the voyage. 1 *B & A.* 575, *Smith* vs. *Plummer.*

But in the case of *White* vs. *Baring,* 4 *Espin. N. P. C.* 22, Lord Kenyon held that the captain of a ship had a lien on the goods and freight for engagements entered into on account of the ship. And it seems now to be settled in this country, that the master of a ship has a lien on the cargo and freight co-extensive with the advances made, and the liabilities incurred by him for the use of the ship during the voyage. 7 *Cowen* 670, *Ingersol* vs. *Van Bokkelin,* 3 *Mason* 264; 11 *Mass. R.* 72, *Abbot* vs. *Shipping* 150.

A lien to this extent is perfectly reasonable; but a lien in favor of a master of a vessel upon the freight for all that may be due to him from the owner, on any account, can hardly be sustained upon principle. In this case, why shall this defendant be placed on any different ground in relation to this note, from any other creditor? We see no reason. This note had no connexion with the voyage in which the freight was earned. Accident placed the money in his hands, and he can have no better claim to retain it than any other creditor would have had, if it had by accident come into his hands.

Nor is there any case that gives any countenance to such a lien. The case of *Hodgdon* vs. *Butts*, 3 *Cranch* 140, has been misunderstood. It is not said in that case that a master of a ship may, as a general creditor, have a lien on the freight. No question of lien arose, was discussed, or decided in that case. The chief justice said, " the freight " had previously been applied by Butts, under the authority " of the Hamiltons, to the payment of a debt due to himself. " He had a right, as a general creditor, to retain that freight " as against the original owners or their assigns." The amount of this is, that Butts, having applied the freight, under the authority of the owners, to pay his own debt, had a right to retain it against them and their assigns, and it amounts to nothing more.