LYLE *against* BARKER, Sheriff, &c. and others.

*Philadelphia, Monday, March 29.*

THIS was an action of trespass *vi et armis*, for breaking and entering the close of the plaintiff, and taking away twenty-nine pipes of *Madeira* wine. The defendants pleaded

The pawnee of goods may maintain trespass against a stranger who takes them away, and recover the whole value in damages, although they were pledged for less. He is answerable for the excess to the person who has the general property.

The sheriff is not, by a domestic attachment, invested with the rights of the defendant, in property that has been pledged by him. He is *quoad hoc* a stranger, and liable in damages to the same extent in case of a trespass.

1813.

READ
*v.*
BUSH.

not guilty, and a special justification under a writ of domestic attachment, at the suit of *Alexander Burton* against *Robert Morris*, junior, which was executed by *Barker* as sheriff, and the other defendants as his assistants.

Upon the trial of the cause, which took place before the Chief Justice at a *Nisi Prius* in *February* last, it was in evidence that *Robert Morris*, junior, in whom the general property of the wine was, was indebted to the plaintiff in the sum of 14,800 dollars, upon eleven promisory notes, drawn in the spring and summer of 1806, at 60 and 90 days. The plaintiff claimed a special property in the wines, under an asserted bailment by *Morris*, as a security for this debt. The sheriff took them out of his possession on the 12th of *August* 1806, in virtue of a domestic attachment against *Morris*, by whose testimony it appeared, that the wine was pledged to the plaintiff by a written agreement, (not produced on the trial) till certain notes of *Morris* should be paid; that these notes were less in amount than the first cost of the wine; and that there were afterwards other notes of *Morris* in the hands of the plaintiff, for which the wines were not pledged.

It was upon this evidence, that the only point now material arose; the defendant's counsel contending that the plaintiff could recover no more in damages, than the amount for which the wines were pledged, which it was his duty to shew precisely; but the Chief Justice in his charge instructed the jury, that if they were satisfied the plaintiff had a special property in the wines, they might give damages to the full value, and interest from the time they were taken away. The jury found a verdict for the plaintiff 8821 dollars 87 cents damages, being the full value of the wines according to the plaintiff's estimate, with interest from the time of the attachment to the day in bank, and including one hundred dollars for the trespass. The defendant moved for a new trial upon the ground of misdirection.

*Wallace* and *Tilghman* for the defendant, contended, that the direction was wrong. The measure of the plaintiff's damages, was the injury sustained, which could not exceed the amount for which the wines were pledged, and the damage done by breaking his close. Where goods are taken from a bailee in consequence of his own negligence, he is an-

swerable over, and in such case there may be a colour for giving him the full value. But they were taken here by process of law, and he is not chargeable over. His right to damages is therefore only commensurate with his personal loss, which it was incumbent upon him to shew, without putting the burden of proof upon us. What would he have recovered, had the trespass been committed by *Morris?* Certainly no more than the sum secured. The defendants are *Morris.* They represented his general creditors who succeeded to all his rights. The same rule ought to be applied to their case. In a suit by the auditors against the plaintiff, for the excess, it will not appear how the jury formed their verdict, how much they gave for the wine, and how much for the trespass. They cannot therefore fix the surplus value recovered by him, beyond the amount of his security.

*Hopkinson* and *Ingersoll* for the plaintiff, answered, that the sheriff did not represent the rights of *Morris.* The auditors are his representatives, and alone have the right to redeem the property he has pledged; at the time of this trespass, no auditors were appointed, and the sheriff was a mere stranger. As between the pawnee and a stranger, the former may recover the whole value in trespass, and is chargeable over for the excess. He has no right to settle his account with the pawnor in an action against a stranger. It would be inconvenient, and the pawnor would not be bound by it. The right of the pawnee to recover the whole value, is founded upon his obligation to deliver up the chattel upon lawful demand, and tender of the money due. His rights against a stranger are co-extensive with those of the pawnor. 2 *Black. Com.* 453. There is no difficulty on the part of *Morris* or the creditors, because all they will have to shew is the value of the wine, without regard to the verdict; and the account must be settled upon that basis.

TILGHMAN C. J. delivered the Court's opinion.

This is an action of trespass for breaking the plaintiff's house, and taking away twenty-nine pipes of wine. The wine was pledged to the plaintiff by *Robert Morris*, junior, for a debt, the amount of which was not ascertained. The cause was tried before me, and I gave it in charge to the jury, that if they found for the plaintiff, they might give the *whole value*

1813.

LYLE
*v.*
BARKER.

1813.

LYLE
v.
BARKER.

of the wine in damages. The point was very little argued, and no authorities cited; so that my opinion was upon a general recollection of the principle, that he who has a special property in chattels, being answerable to the general owner, unless he takes good care of them, may recover the whole in damages against a wrongdoer who takes them away. Upon subsequent reflection and reference to authorities, I am satisfied that the charge was right. I cannot better express my ideas, than in the language of 13 *Co. Rep.* 69. *Heyden and Smith's case.* " If, after taking the goods, the owner " hath his goods again, yet he shall have a general action of " trespass, and upon the evidence, the damages shall be mi- " tigated. So is the better opinion in 11 *H.* 4. 23, that he " who hath a special property in goods, shall have a general " action of trespass against him who hath the general pro- " perty, and upon the evidence, damages shall be miti- " gated; *but clearly the bailee, or he who hath a special pro-* " *perty, shall have a general action of trespass against a* " *stranger, and shall recover all in damages, because that he* " *is chargeable over.*" This authority is cited in 2 *Black. Com.* 453, where the law is laid down substantially to the same purpose, though not in such express terms. The defendant's counsel endeavoured to shew that *Barker* was in the same situation as *Morris*, who had the general property, because he took the wine, as sheriff of *Philadelphia*, under a domestic attachment, issued at the suit of one of *Morris's* creditors. But I cannot see how this places him in the situation of *Morris*, or of those persons intrusted by law with the care of his effects for the benefit of his creditors. Those persons are the auditors appointed by the Court from which the attachment issues, and were not appointed when this suit was brought, and are in no shape parties to it. It might be extremely inconvenient to enter into a settlement of accounts between *Morris* and *Lyle* in this action. A course far more simple is the one which has been taken; that is to say, the plaintiff having now recovered the full value of the wines, stands, with respect to *Morris*, or those who represent him, precisely in the same situation that he did before the wines were taken away. Upon payment of his demand against *Morris*, he is accountable for the wines or their value. The defendant's motion, therefore, ought not to be granted.

Motion refused.