* THOMAS LEWIS *versus* JOHN HANCOCK AND ISAAC WINSLOW.

Where the consignees of goods had paid the freight thereof to the agents of the owner of the vessel, under an engagement from them to pay it back in case they were not legally entitled to receive the same, the consignees were adjudged to be the trustees of the master of the vessel to the amount of the freight, in a foreign attachment commenced after such payment.

THIS was a writ of *scire facias*, to have execution against the defendants, for the amount of a judgment recovered by the plaintiff against one *Constant Benson*, in an action wherein the defendants had been summoned as his trustees.

The defendants came in upon the *scire facias*, and in their disclosure stated that, about the month of August, 1810, they severally received certain articles of merchandise, consigned to them respec

tively from *Charleston, S. C.*, on board the sloop *Juno*, said *Benson* master, the amount of the freight of which they respectively state ; that payment of the said freight was demanded of them by Messrs. *Gay & Wheeler*, and a bill of the same given to the defendants, discharged by the said *G. &. W. as owners ;* that the said *G. & W* had previously produced a letter of attorney from *Jesse Thompson*, calling himself the owner of the sloop *Juno*, authorizing *J. Wheeler*, one of the said firm, to sell and transfer the said sloop, dated at *Charleston*, June 13, 1810 ; and the said *G. & W.* had also exhibited to them a letter, dated at the same place, on the 11th of the same June, in which the said *Jesse Thompson*, the writer, directs *G. & W.* to collect the freight of the sloop *Juno, Constant Benson*, master, discharge the people, and sell the sloop to the best advantage, and credit him (*Thompson*) with the net proceeds ; that the defendants, having no doubt, from the established reputation of *G. & W.*, that the documents by them produced were genuine, and believing that they were thus legally authorized to receive the said freight money, paid the same to the said *G. & W.* before the commencement of the original action, they agreeing to pay it back, if it should be decided that they were not legally entitled to receive the same ; that *Benson* did not claim the freight as due to him as owner of the said vessel, nor do the defendants know or believe that he was the owner thereof ; but, on the contrary, they believe that his only concern and interest therein was that of master only, and terminated on his arrival at *Boston*, and that *Thompson*, the owner * of the vessel, never in-  [ *73 ]
tended that the said freight money should be paid to said *Benson*.

*Sullivan*, for the defendants, moved that they be discharged ; contending that the freight was not liable for the master's debts ; that it belonged to *Thompson*, the owner, to whom the defendants had honestly paid it. The master has a lien on the freight money, when he has received it, and may retain it for repairs and other disbursements upon the vessel, or for his wages. But this is after he has received it. He is but the owner's servant, and a discharge by the principal must be good against the agent.

*Fuller*, for the plaintiff. The master has a lien on the freight money for his own and the mariners' wages, for repairs, &c. The freight is pledged for all these objects. The defendants, having a promise from the owner's agents to refund the money they have paid, stand in the same situation as if they yet retained it. (1)

SEWALL, C. J. The master of a vessel, in which goods are

(1) 4 *Mass. Rep.* 91. — 2 *Caines*, 77. — 4 *Esp. Rep.* 22.

carried on freight, is, by the terms of the contract, as a bill of lading is usually expressed, and as the one in this case must be understood to have been expressed, entitled to demand and receive the freight money, or price at which the goods are to be carried and delivered. One remedy provided for him, by which he may enforce the terms of his contract, is the right of retaining the goods until the freight is paid. If he neglects to secure payment in this course, and part with the goods, and the freight money is afterwards lost, he acts at his own peril, and is made responsible to the owner. He may be understood, as against the owner himself, to have the same right in the freight money which a factor or consignee has in the goods of the principal or consignor, for whom money has been advanced, or any liabilities have been incurred, in consequence of the employment or consignment. The master of a vessel in a foreign port, and at home after a voyage performed, has many liabilities, from which he may have cause to protect himself, by insisting [ * 74 ] on his right * to collect the freight money ; and he is to be considered as having an implied promise from the freighters to pay it to him. (a)

*Defendants adjudged trustees.*

(a) *Lane* vs. *Penniman*, 4 *Mass. Rep.* 91. — 2 *Caines's Rep.* 77. — *White* vs. *Baring*, 4 *Esp. Rep.* 22. — *Ingersoll* vs. *Van Bockkelin*, 7 *Cowen*, 670. — *Hodgson* vs. *Butts*, 3 *Cranch*, 140. — But *Abbot* says the payment of freight to the owners on their demand will be a discharge against a claim by the master, not only in the case of goods brought in a general ship, but also in the case of an agreement, not under seal, made between the master and the charterer, and although the master may have previously given notice to the charterer not to pay the freight to any person but himself. — *Abbott, Ship.* 273, 114. — *Atkinson* vs. *Cotesworth* 3 *B. & C.* 647. — *Smith* vs. *Plummer*, 1 *Barn. & Ald.* 575.