ALBANY,
Oct. 1827.

Ingersoll
v.
Van Bokkelin.

INGERSOLL *against* VAN BOKKELIN.

The master of a vessel may collect the freight; but he has this right not for his own benefit; but as agent of the owner. Hence, the former has no lien on the cargo, as against the owner, by which to secure his general right to receive the freight, as master; but a payment of freight to the owner will discharge the goods; and is a complete defence against an action by the master for freight.

TROVER, for 50 hogsheads of tobacco. A verdict was taken for the plaintiff, by consent, for $3000, subject to [*671] *the opinion of this. court upon the following case; with liberty to the court, to modify the verdict as to the amount, in such manner as they might see fit; or to order judgment of non-suit, or as on verdict for the defendant, if, in their opinion, the plaintiff should not be entitled to recover, and with leave to either party to turn the case into a special verdict or bill of exceptions:

The plaintiff, Ingersoll, was commander of the brig William Henry ; and it appeared in evidence that the de-

Both owner and master are severally liable for all supplies and advances, made for the use of the vessel on the contract of the master, where there is no special agreement by which the credit is given to either exclusively.

And this rule extends to supplies or advances made by consignees of the vessel, as well as others.

And the master has a lien on the cargo and freight co-extensive with the advances made, or liabilities incurred by him for the use of the ship. So of his claim for primage.

Actual advances by him are not necessary to create the lien. It exists for mere liability, without payment.

And though the vessel earn freight on a voyage directed by the pretended owner, but who is, in fact, a mere stranger and tort feasor, from whom the vessel is taken and the possession restored to the true owner by the decree of a court of admiralty ; yet, the true owner, especially if he claim and receive the freight, is bound to indemnify the master against his liability incurred on account of the vessel; and the master has a lien on the cargo and freight, which he may retain or control, to coerce the payment to him of the amount of such liability.

And where the bailee of a part of the cargo, (subject to such lien,) which was placed with him by the master to keep in store for the latter, delivered it to the consignee, by the direction of the owner, on the consignee's paying the freight to the owner; *held*, that such bailee of the master was liable to him in trover.

Delivering goods for safe keeping, by one who has a lien on them, is not such a departing with the possession as destroys the lien.

A right of lien in goods is such a special property in them as will support an action of trover, even against one who converts them by the authority of the general owner.

One to whom the master is liable for advances on account of the ship, is, notwithstanding, a competent witness for the master in an action by him to enforce a lien in his favor on account of such liability. The objection goes merely to the credibility of the witness.

In trover by one having a lien on goods, against another who has converted them by the direction of the general owner, the plaintiff may recover the amount of his lien, as damages.

Otherwise, it seems, where the goods are of less value than the lien. (Vid. note (*a*) at the end of this case.)

Distinction between damages, in trover by one having a special property, against the general owner, or a stranger. In the former case, he recovers according to the value of his special property; in the latter, according to the value of the general property. holding the balance, beyond the value of his special property, in trust for the general owner. (Note (*a*) at the end of this case.)

fendant, on the 15th September, 1822, received from the plaintiff, the 50 hogsheads of tobacco, for which he gave the following receipt : · " Received, Brooklyn, Sept. 15th, 1822, per the brig Wm. Henry, Capt. Ingersoll, from New Orleans, on storage, for acct. and subject to the order of Capt. James B. Ingersoll, 50 hogsheads of tobacco." On the 8th October, 1822, the plaintiff demanded the tobacco from the agent and store-keeper of the defendant, offering to pay the storage and other expenses. The store-keeper refused to deliver it, in the pursuance of orders received from the defendant; and the tobacco was retained.

ALBANY,
Oct. 1827.

Ingersoll
v.
Van Bokkelin.

The plaintiff did not claim the tobacco as general owner; but in virtue of a special lien on it, for the freight, primage and other charges, upon a cargo of 200 hogsheads, (of which the 50 in question were a part,) brought by him in the brig Wm. Henry, from New Orleans to New York. The tobacco was consigned to, and owned by Francis Depau of the latter city. It was shipped by William Kenner & Co., of New Orleans. Upon the arrival of the brig at New York, in September, 1822, 150 of the hogsheads were delivered to Depau; and the remaining 50 were held by the plaintiff for freight and other charges; and placed by him in the defendant's store.

One Robert G. Shaw, of Boston, claimed to be the owner of the brig; and by his direction, the defendant delivered the 50 hogsheads to Depau, he having paid to Shaw or his agent, the whole amount of freight, primage, &c., on the 200 hogsheads, and received from Shaw a satisfactory bond of indemnity.

*To establish the title of Shaw, the defendant produced and read in evidence a bill of sale of the brig. from Robert Elwell, of Boston, (who was admitted to have been her original owner,) to James Andrews of the same place, dated the 4th of June, 1822; also a bill of sale from Andrews to Shaw, dated the 22d of July, 1822. The plaintiff was duly appointed commander of the brig ·by the agents of Elwell, on the 3d of June, 1822.

[*672]

The defendant also produced and read in evidence, a libel filed by Shaw, in the district court of the United

States for the southern district of New York, on the 11th day of November, 1822, against the brig, the plaintiff and others. The libel set forth the title of Shaw, as already stated, and it appeared by the proceedings, that the plaintiff, although duly summoned, suffered a decree to pass against him by default : but that a claim was interposed by George R. Barker, Benjamin Driggs and Wm. C. Barker : that Wm. C. Barker was the surviving partner of the firm of Barker & Hopkins : and that they were the agents of Elwell on the 4th of June, 1822, when the brig was sold by him to Andrews. They had, at one time, been empowered by Elwell to sell the brig ; but the power had been revoked, and notice of the revocation duly given to them, prior to the 7th of June, 1822. Notwithstanding such revocation, however, they, on that day, sold the brig to Driggs, who subsequently sold her to George R. Barker, who claimed and retained her by virtue of such sale.

The sentence or decree of the district court was made on the 13th of September, 1823 ; and adjudged the title of the brig to be in Shaw, and that Ingersoll, Driggs and George R. Barker kept and retained the possession, against the libellant, who was the true and lawful owner ; and adjudged the possession of the brig, her tackle, apparel and furniture, register and freight, to the libellant.

It appeared that after the unauthorized sale of the brig by Barker and Hopkins to Driggs, which took place in New York, she was sent to Perth Amboy ; and there cleared out for her voyage to New Orleans. That previous to this *transfer, her true owners at Boston had advised John Clark, jun., of New Orleans, that the brig was coming to that place consigned to him. But after the transfer to Driggs, he (Driggs) changed the consignment, and sent her to Wm. Kenner & Co., who procured her return cargo of tobacco.

The plaintiff proved that he took command of the brig on the 3d day of June, 1822, in pursuance of an agreement with Barker and Hopkins, as agents of Elwell ; and that he was to have 40 dollars per month, and all primage not exceeding 5 per cent. He further proved by the testimony

[*673]

of John Oldham, (taken under a commission,) one of the firm of William Kenner & Co., that the disbursements for the brig at New Orleans, were between 1000 and 1100 dollars, all of which sum was paid out to different individuals by Kenner & Co., except about 120 dollars, which was paid by them to the plaintiff, and which the witness believed the captain fairly applied to the necessary expenses of the vessel. He further testified that the plaintiff had given his note to Kenner & Co., for the balance due on account of their disbursements, amounting to 1047 dollars and 30 cents, which was not yet paid; and which the company had agreed to wait for until the termination of this suit.

This testimony was objected to, on the ground that the firm of Wm. Kenner & Co., of which the witness was a partner, were interested in the event of the suit. That it was, in fact, prosecuted for their benefit. The objection was overruled.

It was proved that Robert G. Shaw, who claimed and established his title to the vessel, was a merchant of wealth and respectability in Boston.

*L. Smith*, for the plaintiff. The plaintiff has established a legal right to the goods, to the extent of freight and primage; and his possession and legal rights can be defeated only by paramount claims or equities of the defendant, or those whom he represents. The defendant cannot set up the legal or equitable rights of Shaw as a defence. *The former is estopped by his contract. They were delivered on storage. This did not deprive the plaintiff of his possession. It was continued by his bailee, the defendant. Can there be a doubt, had the plaintiff received the freight, that in an action against him by Shaw for the money, the former might have set off the amount expended in repairs, wages or supplies, to enable him to earn the freight? The plaintiff's lien was perfect, and unimpaired. He never could have been compelled to deliver the goods, without the previous payment of freight and primage.

The defendant's evidence should not have been admitted.

ALBANY,
Oct. 1827.

Ingersoll
v.
Van Bokkelin.

[*674]

But if the evidence was admissible, the defendant's situ-ation was no better than Shaw's. The master has a lien on freight and goods, co-extensive with the debts which he contracts as master. (*White* v. *Baring*, 4 Esp. Rep. 22; *Lane* v. *Penniman*, 4 Mass. Rep. 91; and see 11 Mass. Rep. 72, 415; *Milward* v. *Hallet*, 2 Caines, 77; *Hodgson* v. *Butts*, 3 Cranch, 140; Abbott on Shipping, Story's ed., 150, and notes.) Shaw, of course, took the vessel subject to all con-tracts made by the owner before the transfer. (*Portland Bank* v. *Stubbs*, 6 Mass. Rep. 422.) As to the primage, there can be no dispute. The master always receives this to his own use, unless restrained expressly by contract with his owners. (Abbott on Ship., Story's ed. 307.) The de-cree of the court of admiralty could not affect his rights. That merely settled the question of ownership. It did not and could not interfere with any collateral matter.

*J. Anthon*, contra. It cannot be disputed that the master may collect the freight for the benefit of the owner. But the consignee has already paid the freight to the owner. This he had a right to do. The owner had a right to receive it; and so far as the plaintiff's action depends on his right to collect freight for the owner, it fails.

It is conceded that, as against the owner himself, the master has the same right in the freight money, when col-[\*675] lected, as a factor or consignee has in the goods of his *principal or consignor, for advances or liabilities incurred; but no case has gone so far as to give the master a lien on goods in opposition to the owner, in order to coerce him to the settlement of a contested account, especially where such owner is solvent. The adjudged cases, especially the later English cases, look the other way. (9 East. 426; 13 Ves. 594.) *White* v. *Baring*, was a case of insolvency. It is of questionable authority; for a rule was granted to show cause why a new trial should not be awarded for a mistake of the judge, and the suit was afterwards compro-mised. The doctrine of Lord Kenyon, in that case, was not sanctioned by the court; nor is it supported by autho-rity. The note of Judge Story, which is cited, was built

up entirely upon that case. *Hodgson* v. *Butts*, established the master's right as a general creditor, to retain freight received, as against the original owner or his assignee; and *Milward* v. *Hallet*, that an owner receiving a cargo, is bound to pay a loan taken up by the captain, for the benefit of the voyage then pursuing. *Lane* v. *Penniman*, (4 Mass. Rep. 91,) and *Lewis* v. *Winslow*, (11 id. 72,) establish the captain's lien on the freight when received by him. The cases do not go farther than to allow the master's lien on the freight in his hands, to the extent of his claim against the owner upon advances made, and liabilities incurred for his benefit during the voyage; or that, in case of an insolvent owner, the master may give notice, and require the consignee to pay his claim; and if, after this, he pays the owner, and the master establishes his demand, his payment is, *pro tanto*, in the consignees own wrong.

The claim set up in this case, depends on the testimony of Oldham, who was interested, as one of the firm of Kenner & Co., the consignees of the illegal owners. They made the advances, not the master. They became creditors of their employers; (*Milward* v. *Hallet*, 2 Caines, 84;) but took the master's note, and agreed to hold over till the termination of this suit. The note does not appear to have been negotiable; and was, therefore, not a payment. (8 John. 206; 15 John. 224.) The consignees *at New Orleans gave credit to their employers. They had no lien; (*Liebart* v. *Emperor*, Bee's Rep. 344;) and if the note was a payment, it was a voluntary one. The money was advanced for the benefit of the tort feasors; and the consignee must look to them alone. This plaintiff was a party to the admiralty proceedings, which expressly decreed the freight to the real owner; and estops the plaintiff from claiming it. (1 Phil. Ev. 295, 254; 3 Cowen, 120; 4 id. 559.) The same decree declared him a tort feasor as to the real owner; thus dissolving the supposed connection of master and owner, which is the basis of the plaintiff's claim.

*Curia*, per SUTHERLAND, J. The plaintiff contends, first,

[*676]

that, as master of the brig, he had a right to receive the freight earned by her, with the primage due; and that this establishes a legal title in him to the goods in question, to the extent of such freight and primage; and that the defendant cannot avail himself of the legal or equitable claim which Shaw, as the owner of the vessel, might have on the plaintiff, or the persons who originally employed him; and that the evidence in relation to the claims of Shaw, was, therefore, improperly admitted. And, secondly, admitting that this evidence was properly received; and that the defendant is to be considered as representing, or standing in the place of the owner; it is contended that, as master of the brig, the plaintiff had a lien on the goods as well as on the freight, to the extent of the debts, or responsibilities which he may have contracted or incurred on account of the vessel; and that the owner himself is not entitled to the possession of the goods, or to receive the freight, until he discharges such debt or responsibilities.

The freight earned by a vessel, belongs to the owner, and not to the master of the vessel; and though the master has a right to receive or collect the freight from third persons, yet he receives it as the agent, and for the benefit of the owner. And (independently of the question as to the master's lien for advances made by himself or *others,) payment to the owner is a complete defence against any action brought by the master, on the ground of his right to receive the freight.

So far, therefore, as the plaintiff's title to the goods in question, is founded on his general authority to receive the freight upon the cargo, of which these goods were a part, and for the security of which they were retained by him, and deposited with the defendant, it seems to be without foundation. As the freight was paid by the owner of the goods, to the owner of the vessel, to whom it would have been the duty of the master to have paid it over if he had received it, the goods were discharged from the lien under which they were originally held; and the defendant was justified in delivering them to their general owner.

The evidence to establish the title of Shaw, (to whom

[*677]

the freight was paid by Depau,) to the vessel, therefore was properly admitted.

But secondly, the question as to the lien of the master on the goods and freight, for the responsibilities incurred by him at New Orleans, and for his primage, is not, under the circumstances of this case, free from difficulty.

There is no doubt that the owners and master of a vessel are severally and respectively liable, for all necessary supplies and advances furnished for her use on the contract of the master, where there is no special agreement by which the credit is given to either exclusively. Lord Mansfield, in *Rich* v. *Coe et al*, (Cow. 639,) thus states the principle: "Whoever supplies a ship with necessaries has a treble security: 1. The person of the master; 2. The specific ship ; 3. The personal security of the owners, whether they know of the supply or not. (And vid. 1 T. R. 109. 1 H. Bl. 116. 2 Str. 816. 9 East, 426. Abbott on Shipping, by Story, 142.) In this case it is not pretended that the credit for the advances made by Wm. Kenner & Co., for the use of the vessel, was given exclusively to the owners, unless the fact of their being the consignees of the vessel, in judgment of law, produces *that effect, and deprives them of the remedy against the master and the ship, which a stranger would, for similar advances, be entitled to. On the contrary, in addition to the general liability of the master, they took from him his individual note for the amount of their account. There can be no question, therefore, of his liability to that extent.

[*678]

It is conceded that where the master has received the freight, he has a lien on it, and has a right to retain it, to the extent of his claim against the owner, for advances made, or responsibilities incurred by him, for the benefit of the owner during the voyage ; and also, that where the owner is insolvent, the master, by giving notice to the consignee of the goods, of his claim against such owner, and requiring him to pay the freight to him to the extent of such claim, acquires a right to the freight *pro tanto ;* and if the consignee or owner of the goods subsequently pay it to the owner of the vessel, it is a payment in their own

wrong; and will not protect them against an action by the master. But it is denied that any case is to be found, in which it has been held that the master has a lien on the goods, in opposition to the owner; and that he can retain them, until the owner settles and discharges his demands against him in relation to the vessel; especially where there is no question of the solvency and responsibility of the owner.

In *White* v *Baring et al.*, (4 Esp. N. P. Cas. 22,) the master brought an action of assumpsit on a bill of lading, against the defendants as consignees of the cargo, to recover the amount of the freight and primage. The ship belonged to Maillard & Co. She had been chartered on a voyage; and the defendants were consignees for the voyage; and, as such, liable for the freight. Maillard & Co., the owners of the vessel, became bankrupt during the voyage. The captain, after the voyage was performnd, gave notice to the consignees not to pay over the freight to the owners, as he had become responsible for several debts on account of the ship: and, therefore, *claimed to be paid the freight, for the purpose of discharging those debts, as well as the primage which was due to him. Notwithstanding such notice, the defendants paid over the amount of the freight to the owners, Maillard & Co. Lord Kenyon, at *nisi prius*, held that the plaintiff was entitled to recover. He remarked that the captain, by having made himself liable for articles furnished to the ship, thereby acquired a lien on the goods as well as the freight; and that his lien was co-extensive with his liability to the ship's creditors. He seems to have put his opinion upon general principles, and not to have attached any importance to the circumstance of the bankruptcy of the owners.

[*679]

The principle that the master has a lien on the freight, for the purpose of covering all necessary disbursements made by him, or responsibilities incurred in the course of the voyage, and that he can enforce it by retaining the goods until the freight is paid, was distinctly asserted by the supreme court of Massachusetts in the following cases ' *Lane* v. *Penniman et al*, (4 Mass. Rep. 92;) *Lewis* v. *Han-*

*cock & Winslow,* (11 Mass. Rep. 72,) and *Cowing* v. *Snow,* (11 Mass. Rep. 415.) In *Lewis* v. *Hancock,* Sewell, Ch. J., says, the master may be understood to have the same right in the freight money, which a factor or consignee has in the goods of the principal, or consignor, for whom money has been advanced, or any responsibilities incurred, in consequence of the employment or consignment; and he observes, that the master of a vessel in a foreign port, and at home after a voyage performed, has many liabilities from which he has cause to protect himself, by insisting on his right to collect the freight money; and he is to be considered as having an implied promise from the freighters to pay it to him.

ALBANY,<br>Oct. 1827.<br><br>Ingersoll<br>v.<br>Van Bokkelin.

The same general principles in relation to the powers and rights of a master, are recognized by this court in *Milward* v. *Hallett,* (2 Caines, 77;) and in *Hodgson* v. *Butts,* (3 Cranch, 140, 158,) the supreme court of the United States held that the master of a vessel had a right, as the general creditor of the owners, to retain freight as *against them, or their assignees. (And see Abbott on Ship. Story's ed., 150, n. (2.)

[*680]

The owner, Shaw, having received the freight, it is not for him to say that the advances at New Orleans were not made on his account, or for his benefit, but on account of Driggs, who had improperly, or, at least, illegally obtained the control and possession of the vessel. They were made for the benefit of the owner, whoever he might be, and Shaw has received the benefit of them. The admiralty suit only determined the right of Shaw, to the possession of the vessel. It established his right as owner, but did not exonerate him from any of the ordinary responsibilities incident to the character of owner.

The plaintiff never parted with the goods so as to relinquish his lien on them for the freight. They were delivered to the defendant for safe keeping, or storage only. He was the mere agent of the plaintiff, and held them for him.

If then the plaintiff had a lien on the freight, which he had a right to enforce by retaining the goods until it was

paid to him, which the cases seem to establish, he had a special property in them, which will enable him to maintain this action against the defendant.

All the cases agree that the legal liability of the master for advances made by third persons on account of the vessel, is sufficient to create a lien in his favor without any actual advances made by himself.

Oldham was a competent witness. He was one of the firm of Kenner & Co., who made the advances for the vessel at New Orleans, and to whom the plaintiff gave his note for the amount; but whether the plaintiff recovers or not in this suit, cannot affect their rights, or his liability It may have an effect on the ability of the plaintiff to pay his note; but that does not affect the competency of the witness, though it may go to his credit.

The plaintiff therefore is entitled to recover the amount of the disbursements at New Orleans, for which he gave his note, which, in his bill of particulars, are stated at $1040 30; his primage at 5 per cent. on 1800 dollars, the [*681]   *amount of the freight; and his wages at 40 dollars per month, from June 3d, 1822, when he took command of the vessel, to the termination of the voyage; but when that was, does not appear from the case.(a)

The verdict in pursuance of the stipulation in the case, is to be modified accordingly.

                              Rule accordingly.

(a) And so note a case, where, in trover, the plaintiff does not recover damages according to the value of the goods converted; but according to the worth of his special property in them. It was not pretended but that the value of the 50 hogsheads of tobacco would cover the master's claim for liabilities, primage, &c.; otherwise, as the measure of damages ought not to exceed the entire value of the goods, with interest, in any case, the recovery, it will be seen, may be short of the amount of debt with which they are charged; and will then rest on the common ground, the general market value.

Another distinction should likewise be observed, between trover to enforce a lien against the general owner, or one converting the goods by his direction; and the like action against a stranger. In the latter case, the creditor may recover the full value, though exceeding his lien; and then stand a trustee for the general owner, as to the balance; but when the action

Is against the general owner, or one acting under him, the creditor can recover only according to his special interest. This just distinction was raised, commented and acted upon in *Lyle* v. *Barker*, (5 Bin. 457, 60,) where it is shown to be very ancient.