CLARITA, The CLARA. See Cases Nos. 2,-787–2,789.

## Case No. 2,795a.

### Case of CLARK.

[Cited in Re Moore, Case No. 9,751. Nowhere reported; opinion not now accessible.]

## Case No. 2,796.

### Ex parte CLARK.

### In re HEALEY.

[1 Spr. 69.][1]

District Court, D. Massachusetts. Nov., 1843.

MARITIME LIENS—DISBURSEMENTS ABROAD BY MASTER.

A master of a ship having expended his own money for necessary disbursements abroad, has a lien therefor, which may be enforced after the return of the ship to her home port.
[Cited in The Eliza Jane, Case No. 4,363; The Tangier, Id. 13,744.]

This was a petition filed under the United States bankrupt law, by W. F. Clark, master of the brig Maria Theresa, to be allowed $83 out of the estate of Mark Healey, a bankrupt and sole owner of the Maria Theresa, for which sum Clark claimed a lien on the vessel. It was agreed that the Maria Theresa sailed from the East Indies for Boston, in the autumn of 1842; that during the voyage, in January, 1843, she put into St. Helena and obtained provisions and supplies, for which the master drew a bill of exchange, for $83, on the owner. It was also agreed that the Maria Theresa did not arrive in Boston until sometime after the 14th of March, 1843, on which day Healey was declared a bankrupt, and his property assigned; and that, immediately upon her arrival, she was taken possession of by Healey's assignee. Meanwhile the draft drawn by Clark at St. Helena was presented, and upon non-acceptance immediately protested, and Clark was notified that he would be held as drawer. He thereupon filed this petition, praying that upon his delivering up the draft, the assignee should be directed to pay the amount in full.

Edwin Howland, for petitioner.
A. H. Fiske, assignee, pro se.

SPRAGUE, District Judge. The question is whether the master of a vessel, having expended his own money for necessary disbursements abroad, has a lien therefor on the vessel, after she has returned to her home port. It is the settled law in this country that he has no lien upon the vessel for his wages (Abb. Shipp. 147, note); but he has a lien on the freight not only for

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

disbursements (The Packet [Case No. 10,-654]), but also for his wages (Drinkwater v. The Spartan [Id. 4,085]; Ingersoll v. Van Bokkelin, 7 Cow. 670; Abb. Shipp. 139, 147, 377, note). Such lien extends to the cargo also, when it belongs to his employers. Id. 139, note; Hussey v. Christie, 13 Ves. 594 (Sumner's Ed.) note.

No satisfactory reason has ever been given why a master should not have a lien upon the vessel, even for wages. It is often said that it is. because he has a contract with the owners; but this is assigning no reason, for in nearly all the cases of acknowledged lien there is such personal contract. It is said, also, that having the custody and care of the vessel, and being bound to protect it against adverse claims, it would be dangerous to allow him to libel the vessel in a foreign port. But this is no argument against the existence of a lien, but only against a particular time or place of enforcing it; and it presents no show of reason why, after the return of the vessel to her home port, the actual residence of her owners, he should not be allowed to enforce a claim against the vessel, for his personal services in navigating and preserving her. But the rule against such lien for wages is too firmly established to be shaken. The master's claim for necessary disbursements for the vessel in a foreign country, stands upon stronger grounds than his claim for wages. Such expenditure has actually gone to the repairs, equipments, and necessaries for the ship, without which she could not have properly pursued her voyage, and been restored to her owners, and any other person making the same advances would have a maritime lien therefor. There is no rule or principle, either of law or justice, that deprives the master of such a lien, or precludes him from enforcing it, by process against the vessel in her home port, in the presence, and with the knowledge of her owners. The Packet [supra]; Hussey v. Christie, 13 Ves. 594, note; Gardner v. The New Jersey [Case No. 5,233]; 2 Story, Eq. Jur. § 1241; Whitt. Liens. 73, 74; 3 Kent, Comm. 167. The claim of the master, therefore, in the present case, is sustained.

Decree for petitioner.

NOTE [from original report]. It is now held in England, that the master has no lien, on the ship, freight or cargo, in the home port, for necessary disbursements abroad, or for wages. Wilkins v. Carmichael, 1 Doug. 101; Hussey v. Christie, 9 East, 426; Smith v. Plummer, 1 Barn. & Ald. 575; Atkinson v. Cotesworth, 3 Barn. & C. 647; Richardson v. Campbell, 5 Barn. & Ald. 203, note; Gibson v. Ingo, 6 Hare, 112; The Johannes Christoph, 33 Eng. Law & Eq. 600; Bristowe v. Whitmore, 35 Law T. 173. In the United States, it is settled that he has such a lien on freight (and on cargo, when it belongs to the owners of the ship,) for his disbursements. See, in addition to the authorities cited in the text. Lane v. Penniman, 4 Mass. 91; Lewis v. Hancock, 11 Mass. 72; Goodridge v. Lord, 10 Mass. 483; Ingersoll v. Van Bokkelin, 7 Cow. 670, 5 Wend. 315; Richardson v. Whiting, 18 Pick. 530; Shaw v. Goo-

kin, 7 N. H. 16; Hodgson v. Butts, 3 Cranch [7 U. S.] 140; Newhall v. Dunlap, 14 Me. 180; 3 Kent, Comm. 167. These cases have followed the earlier English decisions: Watkinson v. Bernadiston, 2 P. Wms. 367; Ex parte Cheesman, 2 Eden. 181; White v. Baring, 4 Esp. 22; Ex parte Halkett, 3 Ves. & B. 135, 2 Rose, 194, 229, and 19 Ves. 474; Pierson v. Robinson, 3 Swanst. 139, note. It is intimated in The Larch [Case No. 8,085], that the American cases do not necessarily decide that the master has a lien on the freight; but only an equitable right to have the freight applied to pay the expenses incurred in earning it, as in Green v. Briggs, 6 Hare, 395. But see the cases. As to the master's lien on the freight for wages, see Drinkwater v. The Spartan [supra]; The Packet [supra]; and also the remark in the opinion of Putnam, J. (Richardson v. Whiting, supra), that this lien had been enforced in the United States district court for Massachusetts, by Davis, J. Contra, Ingersoll v. Van Bokkelin, 5 Wend. 315, overruling, on this point, the same case in 7 Cow. 670. As to his lien on the ship, for disbursements, it is stated in The Larch [supra], that "it has never been decided in this country," that the lien exists. But see, in addition to the decision of the learned judge of the United States district court for Maine, overruled by The Larch, and the decision in the text, Gardner v. The New Jersey [supra]. Compare, also, The Packet, supra, and the remarks of Chancellor Kent thereon (Comm. 167), with The Orleans, 11 Pet. [36 U. S.] 182.