## NEW-YORK COMMON PLEAS.

### SORLEY, SMITH and others agt. BREWER & CALDWELL.

Where the plaintiffs claimed a *lien* upon the freight of a vessel, by virtue of advances made to the master, for repairs, supplies and expenses incurred in a foreign port to enable the vessel to obtain a cargo on her homeward voyage, and by an assignment from the master, after her arrival, of all his lien and interest to the freight money and earnings of the vessel, to secure such advances,

*Held*, that the defendants, claiming to be entitled to the freight earned, by virtue of a charter-party, previously entered into, between them and the owners (who were alleged to be insolvent), by which the vessel was chartered to them for the voyage in question, be restrained by *injunction*, during the pendency of the litigation, from collecting the freight, and that a *receiver* be appointed to collect the freight earned upon the voyage.

*It seems*, that a master's lien, thus acquired, cannot be divested by the owners of the vessel by any means short of actual satisfaction by payment.

*Special Term, July,* 1859.

MOTION for the continuation of an injunction, and the appointment of a receiver.

MARTIN & SMITHS, *for plaintiffs.*
LAROCQUE & BARLOW, *for defendants.*

HILTON, J. It appears that the bark Convoy, commanded by Abner Crowell, master, arrived at Galveston, Texas, on her voyage from New-York, in a disabled condition, needing repairs and supplies, and requiring money wherewith to pay charges on cotton for transportation from the interior to the coast, and which payment was necessary to enable her to obtain such cotton as freight.

The plaintiffs were merchants at Galveston, and on the application of the master made the necessary advances for these purposes, by means of which the vessel obtained freight upon her homeward voyage to New-York, amounting to $2,130.

The amount thus advanced by the plaintiffs was $3,971 43-100, about $1000 of which was applied in the payment of the charges upon the cotton, which was obtained by the bark for freight.

Sorley, Smith and others agt. Brewer & Caldwell.

After the arrival of the bark at this port, and by writing dated April 8th, 1859, the captain assigned and transferred to the plaintiffs all the freight money and earnings of the vessel upon the voyage, and all lien and interest which he, as such master, had thereto, for or on account of such advances, or of his liability therefor, as collateral security for the repayment to the plaintiffs of the sum thus advanced by them.

The owners of the vessel being insolvent, the plaintiffs aver that they will lose their advances unless they can be protected by a lien on the freight for the advances so made to the captain to enable him to obtain it, and as a court of equity we are asked to enforce this lien thus acquired through the captain for the benefit of the plaintiffs, by appointing a receiver to collect the freight, and restraining the defendants from interfering with it.

In opposition to this claim, the defendants insist that they are solely entitled to the freight earned by virtue of a charter-party, dated December 10th, 1858, entered into between them and the owners of the bark, by which the vessel was chartered to them for the voyage in question. Under this charter-party, the defendants were collecting the freight when this action was commenced, and an injunction against their further interference with it granted.

The plaintiffs now ask that this restraint be continued during the pendency of this litigation, and that a receiver be appointed to collect the freight earned upon the voyage in question.

On the argument of this motion many other facts of a minor character were presented, and many questions discussed which I do not intend to refer to at this stage of the action, desiring that the parties at the trial may not be embarrassed by any view which might now be taken respecting them, and believing that the present application should be disposed of on the facts here narrated.

Nor is it material that the second defence set up in the defendants' answer should be passed upon, further than to remark that it does not appear that, at the time of filing the suit in the

district court by the plaintiffs against the vessel, *in rem*, claiming a lien for the same moneys which are in this action attempted to be collected as a lien upon the freight, the plaintiffs possessed, by assignment from the captain, his lien as master of the vessel, for indemnity for the personal responsibilities incurred by him as such master in a foreign port.

It, therefore, cannot be said that the plaintiffs might have enforced the lien now claimed in that proceeding, because it is not shown that they possessed any claim to it when that proceeding was instituted. ·

That the master had a lien upon the freight and earnings of the vessel for the voyage, in respect to his advances and personal responsibilities, necessarily made or incurred by him while at Galveston, for the safety of the vessel and the successful prosecution of her homeward voyage, I think cannot be doubted (*Van Bokelin* agt. *Ingersoll*, 7 *Cow.*, 670; *S. C.*, 5 *Wend.* 315; *Lewis* agt. *Hancock*, 11 *Mass.* 72; *Ship Packet*, 3 *Mason*, 255; 3 *Kent*, 167, *note* 2; *Parson's Mercantile Law*, 381); and this lien, thus given by law, is capable of being assigned by him, so as to vest in the assignee the same rights which he possessed by reason of it. (*Jewitt* agt. *Coffin*, 20 *Wend.* 603; *Judah* agt. *Kemp*, 2 *John. Cases*, 411.)

The plaintiffs, therefore, occupy the same position before the court as the captain or master, and in an action against parties claiming to collect the freight under color of right acquired through a charter-party made with the owners of the vessel, an injunction is sought pending a litigation in which the rights of the respective claimants are to be determined.

I think the circumstances shown are such as justify me in granting the motion.

It cannot be that a master's lien, thus acquired, can be divested by the owners of the vessel by any means short of actual satisfaction by payment, and to so hold would be in effect declaring a lien to exist, which at any moment might be evaded at the will of the owners.

The injunction will, therefore, be continued and a receiver appointed.