### Kelly and others *vs.* Cushing and others.

A bottomry bond is valid although it includes the personal liability of the master.

The master is personally liable on the bond, in such a case, for the debt secured; but not unless the vessel arrives.

The master may bind the freight, as well as the vessel, in such a bond, by express stipulation; but in the absence of such a stipulation, the bond will create no lien on the freight, directly.

Where the money secured by a bottomry bond is not paid, the lender, on proof of the insufficiency of the vessel as security, and that the pecuniary responsibility of the master is doubtful, may have an injunction to restrain the owners of the vessel from collecting the freight of the cargo brought by the vessel on her homeward voyage.

The master of a vessel has a lien on the cargo and freight, for advances made, or liabilities incurred, by him in a foreign port, for the repairs and supplies of the vessel.

And when the vessel is not of sufficient value to secure the debt, and the master is not responsible, the creditor is entitled to have this lien of the master enforced for the payment of the debt incurred for repairs. Clerke, J. dissented.

THE plaintiffs held a bottomry bond on the ship Dreadnought, for moneys advanced in San Francisco, for repairs and supplies. This bond pledged the ship and the personal responsibility of the captain. The money was payable within forty-eight hours after her arrival at her port of discharge. The money was not paid, and on proof of the insufficiency of the vessel as security, and that the pecuniary responsibility of the captain was doubtful, the plaintiffs applied for an injunction restraining the defendants from collecting the freight of the cargo brought by the vessel on her homeward voyage. The defendants moved to dissolve this injunction, which motion was granted, at special term, and the plaintiffs appealed.

*A. P. Smith,* for the plaintiffs.

*G. Dean,* for the defendants.

INGRAHAM, J.   There is no doubt of the validity of this bond, although it includes the personal liability of the master. It is made payable only after the arrival of the vessel, and it therefore assumes the risk of the safety of the vessel, before the bond is payable. (*Abbott on Shipping, p.* 156, *and cases there cited.*)

The master also is personally liable on this bond for the debt incurred, but not unless the vessel arrives.   There are cases expressing doubts as to the personal liability, but such cases are where the master has attempted to bind the owners, and not himself.   He might also have bound the freight, as well as the vessel, in the bond, and made it liable in that way. (*The Zephyr,* 3 *Mason,* 34. *The Packet, Id.* 255. 3 *Rob. Ad.* 240.   4 *id.* 245.) Not having done so in the bond, such bond created no lien on the freight, directly, though some cases have held the freight liable, where the bond was on the vessel and cargo, omitting the freight.   In such a case Lord Stowell required the freight to be paid over to the creditor before the cargo was resorted to. (*The Dowthorpe,* 7 *Jur.* 609. *See also Leslie* v. *Guthrie,* 1 *Scott,* 683.)

The application for the injunction in this case was based upon the alleged lien which the captain had for advances obtained in a foreign port, and for liabilities incurred by him for the repairs and supplies of the vessel.   There are several cases sustaining this position.   In *White* v. *Baring,* (4 *Esp.* 22,) it was held that the master of the ship had a lien upon the goods and freight for debts which he had contracted on account of the ship, and that the consignee of the cargo could not pay the freight to a ship owner after notice ; and if he did he would be liable to the master to the extent of those debts.   This was doubted in *Smith* v. *Plummer,* (1 *B. & Al.* 575.) It was however adopted in *Lewis* v. *Hancock,* (11 *Mass. Rep.* 72,) and the greater part of the American cases adopt the same rule.

In this court, in *Ingersoll* v. *Van Bokkelin,* (7 *Cowen,* 670,) it was expressly held that the master had a lien on the

cargo and freight coextensive with the advances made or liabilities incurred by him for the use of the ship, and that it is not necessary that he should have actually paid such liabilities. And in the same case in 5 *Wend.* 315, the Court of Errors affirmed the right of the captain to such lien, approving of the case in 4 *Esp.* 22.

The remaining question is whether the plaintiffs have a right to the security which the captain has to enforce the payment of the moneys due them, on proof of the doubtful credit and responsibility of the master.

This principle has been sustained in a variety of cases, upon the broad ground that where a person standing in the situation of surety is provided by the principal debtor with a collateral security for the debt, the creditor is in equity entitled to have it applied in satisfaction of the debt. (*Pratt* v. *Adams,* 7 *Paige,* 615. *Clark* v. *Ely,* 2 *Sandf. Ch.* 166. 3 *id.* 428.) In *Vail & Vail* v. *Foster et al.* (4 *Comst.* 312,) the Court of Appeals decided that a creditor is in equity entitled to the benefit of any collateral securities, which the principal debtor has given to the surety, or person standing in the situation of surety, for his indemnity. The same principle is applicable to this case. The master is liable not as the principal debtor, but for a debt incurred by him for the benefit of the owners. He stands therefore in the same situation as the surety, and as such the law gives him a lien for his protection on the freight of the vessel. The object of this lien is to secure to the master the expenditures made and the liabilities incurred by him in a foreign port; and when it appears that the vessel is not of sufficient value to secure the debt and the master is not responsible, I see no reason why, under these decisions, the creditor is not entitled to have this lien enforced for the payment of the debt of the master, for such repairs. If the master permits the freight to be paid to the owners, his lien ceases, and the same rule, I conclude, would apply to a creditor. Unless therefore he can stay the payment of them, he

would lose any right he may have to have such lien enforced for his benefit. (*Dorley* v. *Brewer,* 1 *Daly,* 79.)

I think therefore the order dissolving the injunction was erroneous and should be reversed, and the injunction restored, with $10 costs of the motion to dissolve, and $10 costs of the appeal.

LEONARD, J. concurred.

CLERKE, J. (dissenting.)  It may be, I suppose, assumed that *Van Bokkelin* v. *Ingersoll,* (5 *Wend.* 317,) has settled the long disputed question as to the lien of a master of a vessel on the freight, for advances made, or liabilities incurred in a foreign port; although it seemed to be contrary to the general current of authority in this country and in England. Strong reasons existed against recognizing such a lien; and the principal reason was, that such a lien may inequitably interfere with the lien of the seamen for their wages.  The law, on the grounds of public policy, and motives of humanity, has been always very solicitous to afford the utmost security to seamen for the payment of their wages; so that, even when the vessel is hypothecated by a bottomry or respondentia bond, the claim, which it secures, has no priority over seamen's wages; although it has a priority over all other claims.

The case of *Van Bokkelin* v. *Ingersoll,* as I have said, undoubtedly recognizes this lien on the part of the master for advances and liabilities; but it was a case where he himself was the plaintiff, prosecuting his right to the lien.  He had actual possession of a portion of the cargo, which he had retained for freight and primage, claiming and asserting his lien.  It was stored by the master with the defendant; who, by the direction of the owner, delivered it to the consignee, on the payment of the freight and primage to the owner. The master sued the store keeper in an action of trover, for that portion of the cargo, and recovered, on the ground that

Kelly *v.* Cushing.

he had this lien for the freight on that portion of the cargo which he had retained ; but it is distinctly affirmed, if he parted with it to the consignee, without receiving the freight, that he would have lost his lien. It is nowhere pretended that for the mere freight itself, due by the consignees, he has any lien after the latter receives the cargo. On the whole, *Van Bokkelin* v. *Ingersoll* goes no farther than to establish the right of a master to retain the cargo until the freight be paid to him, when he has made advances and incurred liabilities in a port other than that of the ship. It is, indeed, further added that if he collects the freight he has a lien upon it for those advances and liabilities, and that the owner of the ship cannot recover the amount of the freight until the master is indemnified. That was a controversy in fact between the master and the owner. Besides, in that, and I think in all the cases, the advances and liabilities were not secured by any bottomry or respondentia bond. The master, in that case, merely gave his promissory note for the amount of the repairs, at ordinary interest, if any. In this case the plaintiffs thought proper to receive for their security an hypothecation of the hull and appurtenances of the ship. The bond did not include more than this ; they were satisfied with it. They could have required more ; and the master could have hypothecated the freight, if the plaintiffs required it. But now they claim a priority above the claims of all other creditors and above the wages of the officers and crew ; after taking this hypothecation on the ship alone ; by which they were to receive interest at the rate of thirty per cent on the amount advanced ; the whole of which they claim in this action.

The order should be affirmed, with costs.

Order reversed.

[NEW YORK GENERAL TERM, January 7, 1867. *Leonard, Clerke* and *Ingraham,* Justices.]