# L. L. TREADWELL v. H. L. DAVIS.

34    601
77    275
34    601
82      6

34    601
114   294

34    601
128   226

34    601
131   384

34    601
136   660

STATEMENT ON APPEAL.—When questions of law alone are sought to be reviewed on appeal, and a statement of facts be necessary to their explanation, a statement on appeal, rather than a motion for new trial and statement thereon, is the appropriate mode of procedure.

PLEDGE OF GOODS—RIGHTS OF PLEDGEE.—Plaintiff and Templeton were severally creditors of Thompson. Templeton, as security for his debt, held in pledge Thompson's goods, of greater value than the sum of both plaintiff's and Templeton's debts. By an arrangement between them, plaintiff guaranteed to Templeton the payment of his debt, and received from him an assignment and the possession of said goods, in pledge to secure the payment of the debts of both plaintiff and Templeton. Thompson, who was not a party to this arrangement between plaintiff and Templeton, afterwards expressed himself gratified at its consummation. Thereafter defendant, as Sheriff of the City and County of San Francisco, levied upon and took said goods from plaintiff's possession, under a lawful writ of attachment against the property of Thompson, issued out in the suit of *Martin* v. *Thompson*, whereupon plaintiff brought this action against defendant for said seizure, and to recover the full value of said goods. *Held*, first, that Templeton lost his lien on the goods, as pledgee, by surrendering them to plaintiff and taking said guaranty for his debt; second, that by said arrangement between Templeton and plaintiff, and the subsequent assent thereto by Thompson, plaintiff acquired, as pledgee, a valid lien on said goods to secure the payment of both said debts; and third, that plaintiff is entitled to recover in this action, and his right of recovery is not limited to his interest only, as pledge of the goods, but extends to the whole value of the goods.

IDEM—MEASURE OF RECOVERY BY PLEDGEE FOR CONVERSION OF PLEDGED GOODS.— In an action by the pledgee against a stranger for the conversion of pledged property, the rule is, that plaintiff is entitled to recover its full value; but if against the owner, or one acting in privity with him, then only for plaintiff's special interest therein as pledgee.

IDEM—LIABILITY OF SHERIFF TO PLEDGEE FOR SEIZING GOODS.—In an action by a pledgee against a Sheriff for a conversion of goods pledged, the Sheriff who has seized them under a lawful writ in his hands will be treated as in privity with the owner, the pledgor, provided he has pursued the law in making such seizure, and will be held only for plaintiff's special interest in the goods; but in any other event, he will be treated as a stranger, and held for their full value.

IDEM—MODE OF ATTACHING GOODS IN HANDS OF THIRD PARTY.—Under the provisions of sections one hundred and twenty-five, one hundred and twenty-seven, one hundred and twenty-eight, and two hundred and seventeen of the Practice Act it is provided, that whilst the interest of a pledgor of property is subject to execution, and may be reached in the hands of the pledgee when a third party, yet this can only be done by serving and enforcing a garnishment on the pledgee, and not by a seizure of the pledge.

CONTRACT—WHEN VALID IN PART AND VOID IN PART.—Where a contract consists of two distinct parts, which are readily severable, and not in any material sense dependent on each other, one part being valid and the other void, the rule is to enforce that part of the contract which is valid.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This was an action for the seizure and conversion by the defendant, who at the time was Sheriff of the City and County of San Francisco, of certain goods from the possession of plaintiff, and to recover their value. The defendant admitted the taking, but justified under a lawful writ of attachment against the property of one Thompson, issued out in the suit of one *Martin et al.* v. *Thompson,* claiming that the goods so seized were and continued to be the property of Thompson, and as such subject to execution against him. On the trial it appeared from the evidence that, prior to the said suit of *Martin et al.* v. *Thompson,* the latter was indebted to one Templeton in the sum of one thousand dollars, to the plaintiff Treadwell in the sum of three hundred and seventy-five dollars, and to one Toland in the sum of six hundred and forty dollars; that for the purpose of securing to Templeton the payment of his debt, Thompson pledged said goods, which at the time were stored in a warehouse, to Templeton, by assigning and delivering to him the warehouse receipts therefor; and it was further agreed between Templeton and Thompson, coupled with the assent of Toland thereto, that Templeton should apply the proceeds of the goods in excess of his demand to the payment of Toland's debt. Subsequently, and with the assent of Toland, plaintiff guaranteed the payment of Templeton's debt, and Templeton assigned and delivered said goods in pledge to plaintiff, as security for the payment of the debts of both Templeton and plaintiff, and for the application of their proceeds, in excess of said debts, to the payment of Toland's debt. Contemporaneously with this last transaction, Thompson became insolvent. Thompson was not a party to this arrangement between Templeton and plaintiff, but soon after, when informed of it, expressed his gratification at its accomplishment. Plaintiff afterwards, and before this suit, paid the Templeton debt. Shortly after this transaction between Templeton and plain-

tiff, and while under it the goods were still in plaintiff's possession, they were seized by defendant under said writ of attachment. The value of the goods was considerably in excess of the debts of both plaintiff and Templeton, and in the Court below plaintiff had judgment for their full value. Defendant appealed from the judgment upon the judgment · roll, accompanied by a statement containing the facts.

The other facts and the points made by appellant on appeal are sufficiently stated in the opinion of the Court.

*McRhae & Rhodes*, for Appellant.

The goods in controversy were subject to the levy of the Sheriff as the property of Thompson, but were not liable, in the hands of Treadwell, to the Templeton debt.

Where goods are pledged for the payment of a debt, the lien may be lost in a variety of ways, as: First—Where possession is lost. (26 Wend. 472.) Second—Where the pledgee parts voluntarily with the pledge. (Edw. on Bail. 210.) Third—By discharge of the original obligation. (Edw. on Bail. 194, 212.) Fourth—Which is the case at bar, by severing the debt from the security—the principal from the incident. (Edw. on Bail. 210, 211; *Polhemus* v. *Trainer*, 30 Cal. 685.)

Treadwell then received the goods free from any lien for the Templeton debt. But having gotten possession of them, he cannot now hold them, subject to that debt, or to his own, or to that of Toland, because: First—At the time this transaction occurred Thompson was insolvent. Second—Thompson was not a party to any of these transactions. Harpending does not show that he was acting by any authorization of Thompson, and no one but Thompson had a right to make any agreement or contract for him in relation to his own property. Third—Thompson was at the time an insolvent debtor, and by law could neither make an assignment of this character, nor could he authorize any one to do so for him, nor could he approve of any such arrangement after it was

made. (1 Hitt. Stat. 558, Sec. 39; *Cheever* v. *Hays*, 3 Cal. 476; *Groschen* v. *Page*, 6 Cal. 138; *Dana* v. *Stanford*, 10 Cal. 277; *Wellington* v. *Sedgwick*, 12 Cal. 475.)

*Cope & Daingerfield*, for Respondent.

By the Court, CROCKETT, J. :

The record in this case presents only the following questions which we deem it necessary to consider, to wit:

First—Can the errors complained of be properly brought before this Court by a statement on appeal, or could this have been accomplished only by a motion for new trial, supported by a proper statement?

Second—Was the lien which Templeton held upon the goods pledged to him by Thompson lost or destroyed, and if so, did the plaintiff acquire a new and valid lien by virtue of the arrangement entered into between him, Templeton and Harpending?

Third—Was the agreement by Templeton, and subsequently by the plaintiff, to hold the surplus for the benefit of Toland, void, as being an assignment for the benefit of creditors, in contravention of the insolvent laws of this State, and if so, did this bar the plaintiff's right of recovery?

Fourth—If the plaintiff was entitled to recover, what was the proper measure of damages? Was he entitled to recover the value of the whole property, or only the value of his special interest in it?

In respect to the first point, we think the errors sought to be reviewed are properly presented by a statement on appeal, and there was no need for a motion for new trial. As we understand the record, there is no controversy as to any material fact, and the action of the Court below is sought to be reviewed on questions of law alone. In such cases a statement on appeal is not only a proper method, but is often the most convenient, expeditious and economical mode of bringing the alleged errors before this Court. (*Hutton* v.

*Reed*, 25 Cal. 478; *Estate of Boyd*, 25 Cal. 511; *Harper* v. *Minor*, 27 Cal. 107.)

On the second point the proposition of the counsel for the defendant is, that when Templeton transferred the warehouse receipts to the plaintiff, but retained the debt against Thompson, he thereby voluntarily parted with the possession of the pledge, which became severed from the debt, and the lien was thus extinguished. This is doubtless true in respect to Templeton. After surrendering the receipts to the plaintiff, and taking from him a written guaranty of the debt, he lost his lien on the goods. But did the plaintiff acquire a new lien, not only for the security of his own debt, but as an indemnity against the liability which he incurred to Templeton? This must depend upon the fact whether Thompson consented to the transaction when it was made, or ratified it afterward. Nothing could be plainer than that the plaintiff acquired a valid lien, provided it was mutually agreed between himself, Templeton and Thompson that the plaintiff should guaranty the debt to Templeton, and should hold the goods for his indemnity and as a security for his own debt. It appears that Thompson was not present at the transaction between the plaintiff and Templeton. But on being informed of it by Harpending, the next day, he said he "was glad the arrangement had been made." This was a sufficient ratification, and made the transaction as valid as if Thompson had been present in person, consenting to it at the time. The plaintiff, therefore, acquired a valid lien on the goods.

The third point presents more difficulty, so far as regards the surplus, which the plaintiff agreed to hold for Toland. But, in our view of the case, the decision of that question does not affect the right of the plaintiff to maintain this action. For, if the plaintiff's agreement to hold the surplus for Toland was conceded to be void, as in contravention of the Insolvent Laws, it would not invalidate the plaintiff's lien. The contract consisted of two distinct parts, readily severable. They were not so united that they must stand or fall together. In such cases the rule is well settled that the Court

will enforce that part of the contract which is valid. We
have seen that the plaintiff acquired a valid lien for his own
protection, which entitled him to the possession of the prop-
erty; and if that part of the contract which related to the
surplus be void, the other was not thereby invalidated. Being
entitled to the possession, he could rightfully maintain an
action against the defendant for seizing the goods.

The remaining point to be considered is whether the plain-
tiff, being only a pledgee of the goods, is entitled to recover
their full value or only the value of his special interest in
them.

The rule appears to be well settled that in an action by the
pledgee against a stranger for the conversion of goods, the
plaintiff is entitled to recover the full value of the goods,
because he is answerable over to the pledgor for the surplus.
But if the goods be converted by the owner or by any one
acting in privity with him, the pledgee can recover only the
value of his special interest in the pledge. (Story on Bail.
Sec. 352; *Lyle* v. *Barker*, 5 Bin. 457; *Heydon & Smith's Case*,
6 Coke, 486; *Ingersoll* v. *Van Bokkelen*, 7 Cow. 670; *Pomeroy*
v. *Smith*, 17 Pick. 85.)

If the defendant is to be regarded as a stranger, he is liable
for the full value of the goods. But, on the other hand, if
he is to be treated as acting in privity with Thompson, the
pledgor, he is responsible only for the value of the plaintiff's
special interest in the goods. The solution of this question
will depend upon the fact whether the defendant pursued the
law in making the seizure as he did; for if Thompson had
an interest in the property which was subject to execution,
and if the defendant was authorized, as Sheriff, to seize the
property in order to subject Thompson's interest in it to sale
under the execution, then he is to be deemed as acting in
privity with Thompson, and would be liable, if at all, only
for the value of the plaintiff's special interest in the goods.
On the contrary, if Thompson had no interest which was
subject to the execution, or if the defendant exceeded his
duty in seizing the goods, he was only a trespasser, and must

be treated as a stranger. It becomes material, therefore, to inquire whether Thompson had an interest in the property which was subject to seizure and sale under the execution, and whether the defendant exceeded his duty.

The Practice Act, section two hundred and seventeen, provides that "all goods, chattels, moneys and other property, both real and personal, or any interest therein of the judgment debtor not exempt by law," shall be liable to execution. The same section provides that "shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in real or personal property, and all other property not capable of manual delivery, may be attached on execution in like manner as upon writs of attachment."

Section one hundred and twenty-five points out the method to be pursued in order to reach such interests of the judgment debtor as are not capable of manual delivery, to wit: by serving a notice of garnishment on the person having the possession or control of the property. Sections one hundred and twenty-seven and one hundred and twenty-eight prescribe how the property is to be reached in the hands of the garnishee and his liability enforced; and one of the provisions is that the garnishee may be examined touching the property; and the Court may "order personal property capable of manual delivery to be delivered to the Sheriff on such terms as may be just, having reference to any liens thereon or claims against the same."

Whilst the interest of the pledgor may therefore be reached under an execution, it can only be done by serving a garnishment on the pledgee, and not by a seizure of the pledge. The law wisely provides that the pledgee shall not be disturbed in his possession unless it be by an order of the Court made after examination, "on such terms as may be just, having reference to any liens thereon or claims against the same." In this method the rights of all parties may be protected; and it is the only method by which the interest of the pledgor can be subjected to an execution. The defendant therefore

violated the law in seizing the goods pledged to the plaintiff, and must be deemed thereafter a trespasser acting without privity with Thompson, and is therefore liable for the entire value of the goods. (*Pomeroy* v. *Smith*, 17 Pick. 85.)

Judgment affirmed.