## Henry J. Ullman *vs.* George M. Barnard.

Flour was purchased by A. in Wisconsin, on conditions, agreed upon between A., C. and the seller, that it should be shipped in the name and on account of C. to B. in Boston, to be delivered to A. on payment of drafts drawn by the seller upon B., and discounted by C., and was shipped in the name of C. to B., and a bill of lading made in C.'s name, who discounted such drafts, and sent the bill of lading and one of the drafts to B. who refused to accept or pay it. *Held,* that no property vested in A. as purchaser, or B. as consignee, until payment of the drafts; that there was a sufficient delivery of the property to C., within the statute of frauds; that such shipment of the flour was no waiver of the conditions of the sale; that C. was entitled to the flour as against a pledge thereof made by B. to another person, to secure advances by him thereon; and, after demand and refusal, might maintain trover for the flour against such pledgee.

In trover by one who has only a special property in the goods as security for his advances, against one having no title, the measure of damages is the full value of the goods. ·

Action of tort for the conversion of three hundred and forty three barrels of flour. Trial before *Dewey,* J., who reserved the case for the full court upon the following report:

There was evidence of these facts: On the 18th of September 1854, Isaac Stiles purchased the flour in question of L. R. Hurlburt & Co., in Racine, Wisconsin, upon condition, as agreed by Hurlburt & Co., Stiles and the plaintiff, " that the flour should be shipped, in the name and on account of the plaintiff, to Bradford & Brown, of Boston, and drafts should be drawn by Hurlburt & Co. on Bradford & Brown for the amount of the purchase, and when these drafts were paid the flour should

be delivered by Bradford & Brown to Stiles as his property."
The flour was shipped in the name of the plaintiff, and the bill
of lading was made in his name; and he thereafter discounted
the drafts for Hurlburt & Co., holding the bill of lading and
flour as security, and sent the bill of lading and one of the drafts
to Boston, and presented it to Bradford & Brown for acceptance,
who refused to accept it; whereupon the draft, together with the
bill of lading, was returned to the plaintiff. The flour was for-
warded by Stiles to Bradford & Brown, and a bill of sale from
Hurlburt & Co. to Stiles was also sent by them to Bradford &
Brown, to be delivered to Stiles when the drafts were paid, but
the bill of sale was never receipted or delivered to him.

Stiles, before going to Racine, had made arrangements with
Bradford & Brown to buy and forward flour to them from the
West, to be sold by them, for which they were to accept drafts
to two thirds of the value of the flour sent them, upon his send-
ing bills of lading with the drafts.

This flour arrived in Boston about the 1st of October 1854,
and was transferred by Bradford & Brown, without any author-
ity from the plaintiff or Hurlburt & Co., to the defendant, to
secure advances of money by him thereon; and there was no
evidence that the defendant had any interest therein. The plain-
tiff, before bringing this action, had demanded the flour of the
defendant, who refused to deliver it.

The flour was placed in store by the Fitchburg Railroad
Company, who gave certificates to the defendant that it was
holden on his account, but afterwards claimed to retain it for a
general balance of freight due them from Bradford & Brown;
and the defendant obtained possession of it by an action of
replevin in his own name, which action was settled before the
trial of· this suit.

The defendant offered to show that before he obtained the
flour from the railroad company, he was compelled to tender
them one thousand dollars for freight. But the court rejected the
evidence as immaterial.

The defendant contended that as Bradford & Brown were
commission merchants, they had authority to pledge the flour

although it should appear that they had not any authority from the owner to sell it, and held no bill of lading of it. But the court ruled that the transfer of this flour to the defendant by Bradford & Brown could only avail the defendant under the provisions of the *St.* of 1849, *c.* 216 ; and the question whether the case came under those provisions was submitted to the jury, under instructions that the jury must be satisfied that Bradford & Brown had authority to sell the flour, to enable the defendant to maintain his lien acquired through them.

The defendant contended that no evidence that the sale to Stiles was conditional was competent, and that no evidence of a title in the plaintiff was competent ; and insisted that no title passed to the plaintiff by the contract, by reason of the Rev. Sts. of Wisconsin, *c.* 76, § 3, and that there was no proof of any delivery to or any possession by Ullman of the flour. But the court overruled these objections.

It did not appear from any evidence introduced, whether the plaintiff had sent any other draft to Bradford & Brown for acceptance and payment, nor whether such other drafts had or had not been paid at maturity by Hurlburt & Co. or any other person. It appeared that Hurlburt & Co. were solvent. The defendant contended that the plaintiff was in no event entitled to damages beyond the amount of the particular draft proved to have been presented to Bradford & Brown. But the court instructed the jury " that, as between these parties and upon the case disclosed, if judgment was rendered for the plaintiff, he should recover the value of the flour at the time of the conversion ; that this was not a case for the reduction of damages upon the ground that the action was brought by one having a special property, and that the avails of the property should be applied for the benefit of the general owner ; that the ground of the present action was that the property never passed to Stiles, or through him to Bradford & Brown, it being a conditional sale, and the condition not performed ; and that no payment to Stiles, or Bradford & Brown, by the defendant could be properly deducted ; that both the general and special property were in other persons, either Hurlburt & Co. or the plaintiff ; that a recovery by the plaintiff would

be for the use of the general owner, if any surplus remained after discharging the drafts for which the property was transferred to the plaintiff; and that the evidence was sufficient to authorize the jury to find a conversion, if the plaintiff's title as claimed was established."

*R. Choate & J. W. Hubbard,* for the defendant.

*W. Brigham,* for the plaintiff.

BIGELOW, J. 1. By the terms of the contract for the purchase of the flour, the sale was a conditional one. No title was to vest in Stiles as vendee, or in Bradford & Brown as consignees, until the drafts drawn by the vendors on them for the amount of the purchase money should be paid. In the mean time, the property was to vest in the plaintiff, as security for the drafts on Bradford & Brown, which he discounted for the vendors. The drafts not having been paid by the drawees, the condition on which the property was to vest in them or Stiles, has not been complied with, and they never acquired any valid title to the flour. *Coggill* v. *Hartford & New Haven Railroad,* 3 Gray, 545. And the defendant's title, being derived solely from Bradford & Brown, is therefore invalid.

2. It is equally clear, that the plaintiff has both the right of property and possession. The flour was to remain as security to him for the amount of the drafts which he discounted. It was therefore shipped in his name, the bill of lading for it given to him, and it was sent to Bradford & Brown, who were to receive and hold it till said drafts were paid; and then, and not before, they were to hold it as consignees for sale, or to deliver it to Stiles. The delivery of the flour by the vendors, in pursuance of this contract, vested the property according to its terms, and not otherwise. The carriers, during its transportation, and Bradford & Brown, on its arrival in Boston, held it as agents of the plaintiff, until the drafts discounted by him were paid. The delivery to them was therefore sufficient to vest the property in the plaintiff, and constituted a valid sale within the statute of frauds of Wisconsin, where the contract was made. Rev. Sts. of Wisconsin, *c.* 76, § 3. It would also be sufficient under our own statute. Rev. Sts. *c.* 74, § 4.

47 *

3. There is no evidence in the case, that the condition on which the sale was made was varied or waived by the parties. The acts of Stiles, in shipping the flour and superintending its transportation, are perfectly consistent with the original terms of the contract. He was to have an ultimate interest in the property, and might well be permitted by the vendors and the plaintiff to take charge of its transmission to the place of its destination, without any intent on their part to surrender their right to it under the contract of sale.

4. There is nothing in the evidence that sustains the position that Bradford & Brown held the flour on consignment at the time they pledged it to the defendant. On the contrary, it appears that it was in their possession as agents of the plaintiff, holding it as security for the owners of the drafts discounted by him, according to the stipulations of the original contract of purchase. The verdict of the jury, under the instructions given by the court, disposes of this question, and seems to us to be entirely in accordance with the proof. There was no consignment to them at the time they pledged the flour to the defendant. The consignment to them was conditional on the acceptance of the drafts by them ; and having refused to accept them, they never held the property as consignees.

5. The evidence of conversion by the defendant was sufficient to entitle the plaintiff to maintain his action. There was direct proof of a demand and refusal.

6. The measure of damages is the whole value of the flour, with interest from the time of the conversion. The right of property and possession were both in the plaintiff; and although he had only a special property in the flour, as security for the amount of the drafts, he is entitled to recover its full value. He is answerable over to the general owner. It is no reason for a reduction of damages in this case, that a third person has an interest in the property. *Lyle* v. *Barker*, 5 Binn. 457. *Wheeler* v. *Webb*, 15 Conn. 502. The rule might be otherwise, if it appeared that the defendant was entitled to the property after the claim of the present plaintiff upon it had been satisfied *Spoor* v. *Holland*, 8 Wend. 445. *Judgment on the verdict.*