Creery
v.
Holly.

## CREERY *vs.* HOLLY.

*Parol evidence* is inadmissible to vary the terms or legal import of a *bill of lading* free of ambiguity; and it was *accordingly held*, where a *clean bill of lading*, which imports that the goods were stowed *under deck*, was given, that parol evidence of an agreement by the vendor of goods that they might be stowed *on deck* could not legally be received, even in an action by the vendor against the purchaser for the price of the goods, although the goods were lost in consequence of their stowage on deck.

*It seems*, however, that had it appeared in the *bill of exceptions* that the defendant had insisted that the *bill of lading* was obtained by *fraud*, and that question had been submitted to and passed upon by the jury and a verdict found for the defendant, a judgment rendered upon such verdict would have been sustained.

ERROR from the superior court of the city of New-York. Creery sued Holly in the court below to recover the balance of the value of a quantity of wrought iron, ordered by the defendant to be shipped from *Baltimore* to New-York. The plaintiff proved the shipment of 90 barrels of wrought iron at Baltimore on board a schooner, and produced a *clean bill of lading*, received on shipping the goods, signed by the mate of the vessel, setting forth that the 90 barrels of iron were shipped in good order and well conditioned, and to be delivered in like good order and well conditioned (the dangers of the sea only excepted) to David Holly, (the defendant in the cause,) or his assigns, on paying freight. The plaintiff proved the amount due, and rested. The defendant then offered to prove a *parol agreement* between the plaintiff and the master of the vessel, that notwithstanding the bill of lading, the goods in question should be shipped *on deck*; that the goods were accordingly shipped on deck, and that the master, encountering a storm on the passage to New-York, threw the 90 barrels of iron overboard, whereby they were totally lost; and that the *under deck load* arrived safely. This evidence was objected to by the plaintiff, the objection was overruled, and the plaintiff excepted. The defendant then proved an agreement between the agent of a line of packets to which the schooner belonged and the plaintiff to take *on the deck* of the schooner a lot of iron in barrels for transportation to New-

York, and that the *freight* of the iron was less than it would have been had it been placed under the hatches. The goods were accordingly shipped, and on the day succeeding their shipment, the clerk of the plaintiff came on board the schooner with *clean bills of lading* prepared, which were signed by the mate, without inserting therein that the goods were to be stowed *on deck*, although that they should be so stowed was spoken of by the mate and plaintiff's clerk. The mate proved that when the schooner sailed from Baltimore, he considered her perfectly safe—not at all carelessly loaded or overloaded. The plaintiff proved, on his part, that it was customary and well known to all who shipped goods in the line of packets to which the schooner belonged, that although a clean bill of lading is given, the captain stows the articles mentioned in the bill *on deck* or *under deck*, as best suits his stowage, he taking the responsibility if jettison occurs as to an article that ought to be *under deck*. The plaintiff also proved that when the bill of lading does not state that the goods are *on the deck*, it is understood, according to the custom of merchants, that the goods have been stowed *under deck ;* and if the goods are on deck, the captain and shippers assume the risk. It appeared on the trial that the iron was thrown overboard in a storm. The jury, under the charge of the court, found a verdict for the defendant, on which judgment was entered. The plaintiff sued out a writ of error.

*J. Anthon,* for plaintiff in error, insisted that the plaintiff, having shipped the goods according to the defendant's orders, and procured a *clean bill of lading,* importing, according to mercantile usage, that the goods were stowed *under deck,* and transmitted it to the defendant, was entitled to recover the price of the goods. Parol proof was inadmissible to vary the import of the bill of lading. *Barber* v. *Brace,* 3 *Day's Conn. Cas. in Err.* 10. Such evidence could not have been received in an action by the defendant against the master of the vessel. The plaintiff, in making the shipment, acted as the agent of the defendant, and all that could be required of him was so to conduct the business as to enable the defendant to receive the goods on their arrival, or recover the value in case of loss.

UTICA,
July, 1835.

Creery
v.
Holly.

*C. V. S. Kane,* for defendant in error, admitted that as between the plaintiff and the master of the vessel, the technical rule of law would apply, that the bill of lading was conclusive, and that its legal import could not be varied by parol proof, unless fraud was shewn ; but he insisted that principle was not applicable as between the parties to this suit. The plaintiff was bound to ship the goods according to the usual and customary mode of shipment ; instead of doing which he violated his duty by agreeing they might be stowed *on deck,* and in consequence thereof the loss happened. Had the defendant procured an insurance according to the bill of lading, his policy could not have been enforced. The proof of the agreement of the plaintiff to have the goods stowed *on deck,* did not contradict or vary any written contract between the defendant and the plaintiff, and it therefore was not inadmissible in a suit between them ; nor would it have been inadmissible even in an action against the master, for it would have shewn fraud in the procuring of the bill of lading. The case of *Barber* v. *Brace,* cited on the other side, was an action against ship-owners for loss by negligence in stowing goods on deck which were thrown overboard. There was a clean receipt given for the goods, yet the defendants were permitted to shew that the goods were stowed on deck by the parol consent of the plaintiff ; and the defendants had a verdict, which the court refused to set aside. The doctrine of *agency* has no application to this case.

*By the Court,* NELSON, J. The bill of lading is the written evidence of the contract between the owner of the goods and the master or owner of the vessel for the carriage and delivery of the goods at a certain freight, when sent by sea or other public waters. The master usually keeps a copy of it ; whether he did so in this case does not appear. One of the bills is usually forwarded to the consignee, whether agent or vendee. The consignee, on receipt of the bill of lading, signed by the master of the vessel, upon the strength of it not unfrequently insures the goods, sells or pledges them for money ; and the endorsement upon the back of the bill will transfer the title to the goods, or at least all that belongs to the en-

...orser. In a word, every disposition it seems may be made of the property by means of the bill of lading, that might be made if the consignee had the actual possession of the goods; the delivery on board of the vessel and transmission of the bill of lading being a virtual delivery of the goods to the consignee.

It is obvious from the use of the bill of lading in the management and disposition of the property, and the confidence given to it, that it should be considered high evidence of the truth of what appears upon its face. It however should receive a reasonable interpretation, and like other written instruments, evidence *aliunde* may sometimes be necessary properly to understand its contents, and adjust the rights of the parties to it. The case of *Barrett* v. *Rogers*, 7 *Mass. R.* 297, is an instance where explanation was admitted. There the bills were in the usual form for the delivery of three cases of velvets, and acknowledged the receipt of them *in good order*. The suit was against the master, on the ground that they had been damaged in the carriage. The judge admitted evidence as to the condition of goods when delivered on board, and stated to the jury that the bill was not conclusive upon the defendant that they were then in good order. *Sedgwick, J.* in delivering the opinion of the court, said, that a bill of lading is an instrument of a nature to command great regard, and imposing a proportional obligation upon those who are bound for the execution of the responsibility which it assumes, there can be no doubt; but this responsibility must have reasonable limits, which must be determined by the nature of the subject matter. If the property to be transported, and which was declared to be " *in good order,*" was in all parts open to inspection, and no fraud or imposition was practiced, it might be unreasonable to say that no evidence should be admitted to prove that it was not in good order. The same principle is stated by Mr. *Abbott*, on shipping, 249, and it undoubtedly implies that as a general rule parol evidence is not admissible to vary the contents of the instrument. If the bill of lading contains the contract between the parties, then it necessarily follows that parol evidence can only be admitted upon the rule of evidence applicable to written instruments. That it is so to be

considered, is apparent from an inspection of it, and is conceded by approved authorities. This is also evinced by the alterations that have frequently been made in the clause containing the qualification of the masters and owners liability. *Abbott on Ship.* 218.

It is true in this case that nothing is said *in the bill* as to the manner of stowing away the goods, whether *on* or *under the deck;* but the case concedes that the legal import of the contract, as well as the understanding and usage of merchants, impose upon the master the duty of putting them under deck, unless otherwise stipulated; and if such is the judgment of the law upon the face of the instrument, parol evidence is as inadmissible to alter it as if the duty was stated in express terms. It was a part of the contract. 8 *Johns. R.* 189. It seems to me it would be extremely dangerous, and subject to the full force of every objection that excludes the admission of this species of evidence, to permit any stipulation, express or implied, in these instruments, when free from ambiguity, to be thus varied; and besides, from the high character given to these instruments in commercial business, would expose the insurer and purchaser to frauds, against which they could not well be protected, without wholly rejecting them. If the implied obligation of the master in this case, arising out of the conceded construction of this bill of lading, may be varied by parol testimony, I do not see how any other stipulation included in it could be sustained upon an offer to impeach it in the same way.

But it is said fraud was committed upon the master by the agent of the plaintiff, in procuring the mate to sign a different contract from the one agreed upon, and in pursuance of which the goods were shipped. The answer to this position is, that the case was not put on that ground before the court and jury. Such a defence would draw in question the validity of the instrument altogether. The point presented in the bill of exceptions is not whether fraud in the execution of the instrument would not avoid it, but whether parol evidence was admissible to vary its terms, which are very different questions. Rejecting the parol evidence to vary the bill, and putting the rights of the consignee against the owners o

the Martha upon the contract as there declared, it is conceded his remedy would be undoubted and every ground or pretence of defence to suit removed. That the contract cannot be altered in the manner set forth in the bill of exceptions, I have already endeavored to show. That it may be wholly avoided by fraud in the execution of the bill of lading, is not denied. If thus avoided, the parties to it would then be thrown back upon such an agreement as could be proved, resting wholly in parol.

Judgment reversed.