Denio, J.
The language of the bond goes no further than to state the contract between the obligors and the obligee. If there was a cotemporaneous contract between the obligors respecting their rights, duties and obligations among themselves, in the event of their being made liable by the default of Leyden, that contract was not written out in terms, but was the judgment of law upon the fact of their becoming sureties. It follows that an agreement among the sureties arranging them eventual liability among themselves in a manner different from what the law would prescribe in the absence of an express agreement, would not contradict any of the terms of the bond. But the legal effect of a written contract is as much within the protection of the rule which forbids the introduction of parol evidence as its language. (Thompson v. Ketcham, 8 John., 190; La Farge v. Rickert, 5 Wend., 187; Creery v. Holly, 14 Wend., 26.) This is a valuable principle which we would be unwilling to draw in question ; but we think it is limited to the stipulations between the parties actually contracting with each other by the written instrument. For instance, none of the terms by which these obligors became bound to the corporation of New-York can be varied by parol evidence; and the construction which the law attaches to those stipulations is equally unalterable as the written language. *465 Such is the doctrine of the cases to which I have referred. Thus, where a promissory note is payable generally without the mention of any time, the law holds it payable on demand, and parol evidence is not permitted to show that a different time of payment was agreed on; where one agreed in writing to deliver portable articles which he had sold, at a future day, but nothing was said about the place, it was held that they were to be delivered at the residence of the vendee, and the vendor was not allowed to prove that the other party orally agreed to call for them; and where a bill of lading was silent as to the part of the vessel in which the goods were to be stowed, but the law was settled that in such cases the undertaking was to carry them under deck, it was held incompetent to show by parol an agreement that they-might be shipped upon the deck. These were all matters which it was the office of the contract to define and regulate; but ¿he engagements among themselves of the several parties "who have become bound to another by a joint, or a joint and several contract, have no necessary place in the instrument between them and such other contracting party. They are foreign to the purpose and object of the principal contract, and are not generally to be looked for among its stipulations. In this official bond, for instance, the agreement now set up on behalf of McGloin, would be quite impertinent, and would, j; it is presumed, not have been allowed to be inserted by the officers whose duty it was to receive the bond. The relations of joint or several obligors or promissors inter sc sc are, it is true, sometimes defined by their signatures to or otherwise indicated in the principal contract; and in such cases the writing is evidence of their agreement. (Harris v. Warner, 13 Wend., 400.) But in the absence of such indication, the form of the contract as between the obligors or promissors and the other contracting party, does not prevent the introduction of parol proof to determine the relations of such obligors or promissors as between themselves. It *466 is upon this principle that the maker of an accommodation note, or the acceptor of an accommodation hill who has had it to pay, may recover against the payee or drawer for whose benefit it was made or accepted upon showing the facts by parol, though these are directly contrary tó the written Contract. (Griffith v. Reed, 21 Wend., 502, 505, and cases cited per Bronson, J.) So joint makers may always show by the same species of evidence the relations which they sustain towards each other, for the purpose of enforcing contribution against the real principal or among the sureties or when justice among themselves requires it; and they may even do so as against the other contracting party where he was aware of the relation, and their defence as against him depends upon it. (Artcher v. Douglass, 5 Denio, 509.)
It has frequently been said that the liability to contribution between several co-sureties, depends upon principles of equity rather than upon the idea of. a contract of any kind among themselves. Hence it has been held that in cases where it appears that the several sureties were ignorant of the engagements of each other, and where, therefore, the possibility of a contract between them is repelled, they .are nevertheless liable to contribute. (Craythorne v. Swinburne, 14 Ves., 160; Norton v. Coons, 3 Denio, 130; S. C. on appeal, 2 Seld., 33; Campbell v. Mesier, 4 John. Ch. R., 337.) If the liability does not depend upon contract, the rule relied on by theícoünsel for the appellant has no applies,tion. There is a class of cases in which, for the purpose of the remedy, the courts have implied a contract between the co-stlreties cotemporaneous with the execution of the principal contract. It is upon that theory that the representatives of a deceased surety are held liable where the breach occurred after the death of their testator. (Bachelder v. Fisk, 17 Mass., 464; Bradley v. Burwell, 3 Denio, 61.) I think the contract is assumed for the purpose of enforcing the equitable principle of contribution, and not upon the idea that any such contract actually exists. The precise *467 question now before us has been several times presented to the courts. In Craythorne v. Swinburne, just referred to, Lord Elden seemed to consider parol evidence in such cases admissible, but the facts did not require the question to be determined. In Blake v. Cole (22 Pick., 97), the exact question arose in a case singularly like the present in its facts, and it was determined in favor of the admissibility of the parol evidence. In Norton v. Coons, supra, the question was upon the sufficiency of the parol evidence to make out a contract which should exempt the defendant, a surety, from contribution and not upon the legal competency of parol evidence, and although one of the judges, when the case came to this court, was of opinion that parol evidence was inadmissible, the other members of the court who concurred in the judgment were careful to put the decision upon other grounds. Upon the whole, I am of opinion that the exclusion of the evidence on the ground suggested, would not be warranted by principle or authority.
The question whether the undertaking of O’Neil was one, which the statute of frauds required to be in writing, is more difficult than that which we have been considering. If the case be considered irrespective of the circumstance that O’Neil was also a surety in the bond, there are adjudications on both sides of the question. In Harrison v. Sawtel (10 John., 242), the plaintiff had become special bail for one Foot, at the request of the defendant and on his promise to indemnify him. The plaintiff having sustained damages on account of being bail, brought this action on the agreement, and it was held that the statute was not in his way : but then it appeared that the defendant was himself bound' to indemnify Foot, and that circumstance was relied on by the court. In Perley v. Spring (12 Mass., 297), a person in jail on civil process, placed in the hands of Spring property to enable him to procure bail. He procured Perley to be bail and promised to indemnify him. " In an action on this promise, the statute being relied on, it was held that it was *468 not an undertaking to answer for the debt, &c., of another, and the plaintiff recovered. In Kingsley v. Balcome (4 Barb. S. C. R., 131), the plaintiff entered into a recognizance for the appearance of a person charged with a felony, upon a promise of the defendant to indemnify him. The person held to bail failed to appear and the plaintiff had to pay the penalty of the recognizance. In an action to recover on the contract of indemnity, the court held the promise to be within the statute. The same decision was made in Green v. Cresswell (10 Adolph. & El., 453), where the undertaking was to indemnify the plaintiff for becoming bail to the sheriff in a civil action. The opinion was by. Chief Justice Denman.
The cases where the person making the promise was himself bound for the default of the third person, are uniform in holding the contract to be unaffected by the statute. Thomas v. Cook (8 Barn. & Cress., 728) was a case in which the plaintiff and defendant both executed a bond to indemnify one Morris against certain copiartnership debts which the former partners of Morris had engaged to pay and to provide indemnity against, and the plaintiff signed the bond at the request of the defendant and on his promise to indemnify him, and the court of king’s bench, Bailey, J. and Parke, J. giving opinions, held that it was not a promise to answer for the debt, default or miscarriage of another person, and the plaintiff had judgment. This case was prior in time to Green v. Cresswell, and unless the distinction to which I have adverted is material, it is overruled by that case. On the argument of Green v. Cresswell, the plaintiff’s counsel alluded to this difference: “In Thomas v. Cook, he said, the defendant was himself liable upon the bond independently of the promise upon which he was sued.” Patterson, J., said: “It maybe said that the default there, w*as the default of the plaintiff himself in part.” Besides these sentences, the court in the latter case did not in terms notice this distinction, but disapproved of the ruling in Thomas v. *469 Cook. Blake v. Cole was referred to upon the first question which I have examined. It was an action by a surety in an administration bond against a co-surety in the same bond for contribution, and was resisted on the ground that the defendant became such surety upon the request of the plaintiff and upon the plaintiff’s verbal promise to save him harmless. The defendant proved the agreement and prevailed in the action. The point does not appear to have been taken that the contract was within this particular part of the statute of frauds, though it was insisted that it was an agreement not to be performed within a year, and therefore required a writing. The court held it unobjectionable in that respect, and that it might be proved by parol.
In the case before the court, the engagement of O’Neil to answer for the default of Leyden, was in writing. He was bound severally as well as jointly with McGloin and the other sureties. He was under no greater obligation to respond to the corporation for the defalcation of Leyden in consequence of the promise to O’Neil than he would have been if lie had made no such promise. Lord Denman’s objection to holding the promise good in Green v. Cresswell was that the statute might be evaded. “ Every promise, he said, to become answerable for the debt or default of another, may be shaped as an indemnity.” This reason certainly does" not apply where the indemnitor is otherwise bound in writing for the party whose default is to be provided against. I am of opinion that where a person is about M to become bound by writing to answer for the default of a third party, and he procures another to be bound with him in the same obligation by promising to indemnify him, that this is an original promise and not within this branch of the statute of frauds.
The agreement was satisfactorily proved, and upon the whole case I think the judgment of the supreme court ought to be affirmed.
*470 Dean, J.
The plaintiff Barry has no interest in this litigation, which originates in an order of reference the ascertain the rights of the defendants with respect to each other. The appellant is the administratrix of the estate of Felix O’Neil, deceased. This estate has paid an amount on a bond of John Leyden, signed by O’Neil, McGloin and others, as sureties of Leyden. The proof satisfied the referee that McGloin was the only solvent surety of whom the estate of O’Neil could obtain contribution. It also satisfied him that McGloin signed the bond at the special instance and request of .O’Neil, and on his express promise that he would indemnify and save him harmless from any loss in consequence of his becoming such surety. The court below has held that on these facts the defendant, McGloin, was not liable to contribute to the estate of O’Neil. The appellant, on the contrary, claims that it was error to allow the evidence of this request and agreement on the part of O’Neil, on the ground that it is admitting parol evidence to contradict a written contract; and also that if this request and agreement were properly proved, that the agreement was void as being a promise for the debt or default of a third person. Each of these positions are untenable.
.McGloin and O’Neil did not enter into a written agreement with each other, but with the obligee in the bond. As between the obligee and the obligors it would be no defence that an arrangement had been made between the parties to the instrument,, that some one or more of the obligors had agreed to pay in case of default of the principal, because the writing inter-partes is the evidence of the agreement. But as between the various sureties there is no written agreement, there is only an equitable presumption raised by the fact of payment, that the sureties ought to contribute equally for the default of the principal. This equity can be rebutted by parol. (10 Barb. R., 512; 6 ib., 199; Blake v. Cole, 22 Pick., 97.) As a test, to deter *471 mine whether the right of a surety against his co-sureties to contribution, is founded upon the written instrument or upo r the equitable presumption of an agreement to contribute raised by the payment of the money, take the statute of limitations : When does it begin to run, from the time of the signature of the paper or the payment of the money V This question answers itself. Another test will lead to the same result. The written instrument signed by the principal and sureties was a bond under seal; the right to sue on this is limited to within twenty years from the time the cause of action accrued; will it be contended that the right of a surety to sue for contribution also extends to twenty years after payment by him? Or if we had the division of actions which formerly prevailed, would any lawyer bring an action of covenant or debt for contribution? These considerations seem to me to dispose of the whole case adverse to the claim of the appellant.
It is unnecessary to examine the other question, viz: whether the agreement on the part of O’Neil was not void by the statute of frauds, because McGloin does not seek to recover anything on the agreement. The case now is as though O’Neil had proceeded and paid the amount of the default of Leyden and then sued McGloin. A party who has voluntarily performed an agreement void by the statute, can never sue and recover what he has paid under it. It is not now needful therefore to determine whether this is an agreement which would be valid and which McGrloin could enforce as against O’Neil, if he, McGrloin, had been compelled to pay anything as surety. It will be in time to decide that when the question arises.
The judgment should be affirmed.
Judgment affirmed.