JOHN A. BLANCHARD & others *vs.* WILLIAM K. PAGE & otners.

The shipper named in a bill of lading may sue the carrier for an injury to the goods although he has no property, general or special, therein.

ASSUMPSIT on a bill of lading and on certain receipts.    At the trial in this court at March term 1854, *Merrick*, J, ordered a nonsuit, subject to the opinion of the whole court, who, after argument, delivered an opinion in favor of the defendants.    The plaintiffs thereupon moved for a rehearing, which was granted, and the case reargued in writing.    The facts appear in the opinion.

SHAW, C. J.    This is an action of contract, brought by John A. Blanchard and others, constituting the firm of Blanchard,

Converse & Co., merchants of Boston, against Rufus K. Page and others, owners of the ship St. Peters, to recover damage for a loss on goods delivered to the defendants at Boston, to be carried, for a stipulated freight, to New Orleans. The ship was put up for freight by advertisement, by the authority of the defendants, as a general ship, by Silloway, Calef & Co. shipping agents, and a bill of lading was signed in behalf of the master, by one of the shipping agents, dated April 1851.

By the bill of lading, the goods purported to be shipped by Blanchard, Converse & Co. on board the ship St. Peters, master, and bound to New Orleans, to say, &c. goods enumerated, being marked, &c. and are to be delivered, in like good order, at New Orleans, (dangers of the seas only excepted,) unto A. J. Gaines & Co. or to assigns, they paying freight for said goods, at rates stated.

This is in the usual form of a bill of lading, prepared to be signed by the master of such freighting vessel; this was not so signed, but signed by one of the shipping agents, " for master." It is found that no master had been then appointed, but it was so signed by the authority of the owners.   No question is made in the present case, that the defendants are liable ; but we mention this for the purpose of making a preliminary remark or two upon the nature of this species of mercantile contract, as usually in fact made by the master.

A bill of lading, though commonly made by the master, is considered in law as made with the owners also, and both he and they are separately bound to the performance of it.   Abbott on Shipping (7th ed.) 319. *Boson* v. *Sandford,* 3 Mod. 321. *Ellis* v. *Turner,* 8 T. R. 531.   The ground is this : the contract in terms is the act of the master, who has possession of the ship and the conduct of the voyage, and binds him ; but as the freight or compensation for carriage enures to the benefit of the owners, and the master acts in their behalf, and as their agent, they are also liable.

Another observation is, that although, as between the master and owners of a freighting vessel, the master is entitled, in the first instance, to collect and receive freight due according to bills

of lading, and may recover it even against a shipper who has against his consent paid the owner; yet the reason plainly is, because, by the maritime law, and the custom of merchants, the master has a lien on such freight, for the payment of seamen's wages and other disbursements, and such lien, on mere debts or choses in action, can only be preserved by giving the master the power, in the first instance, to collect them, he being accountable over to the owners, as those entitled to the profits. *Lewis* v. *Hancock*, 11 Mass. 72. But see *Smith* v. *Plummer*, 1 B. & Ald. 575; *Ingersoll* v. *Van Bokkelin*, 7 Cow. 670.

Who are owners of a vessel for a particular voyage, and entitled to the profits of a particular enterprise, where the vessel has been chartered, or let out, by parol agreement or otherwise, is a distinct question, depending on the terms of the charter party or other contract of hiring, and not material to the present case.

The precise question then in the present case is this: whether the plaintiffs, named as shippers of the goods in the bill of lading, may maintain an action for damage done to the goods, (not excepted as caused by perils of the sea,) after they were received by the defendants, at the ship, for the purpose of carriage, and before they were delivered to and received by the consignees at New Orleans, named in the bill of lading, although it is shown, by evidence *aliunde*, that the plaintiffs had no right of property, general or special, in the goods, and no other right or interest in their safe carriage, except that arising from the bill of lading.

The facts are these: that the goods were all purchased in Boston, by Sutton, Griffiths & Co. of Fort Smith, Arkansas, by Sutton, one of the firm; that a small parcel of the goods were purchased of the plaintiffs, and the residue of various Boston houses; that the plaintiffs were authorized and requested by Sutton, Griffiths & Co. to cause the goods purchased of them, and also those purchased of all the other sellers in Boston, to be shipped on board of a vessel for New Orleans, to a forwarding house there, named by them, A. Q. Gaines & Co., to be forwarded by them to the owners of the goods at Fort Smith. All these goods, at the time of purchase, were paid for by Sutton, Griffiths & Co., by notes on time, which were all paid at

maturity. Such payment by notes negotiable must be deemed *prima facie* payment and satisfaction by the general rule of the common law, independently of the peculiar rule of Massachusetts, unless such notes fail to be paid at maturity, and are offered to be returned, and the price is demanded. But even without such payment by note, the sale of the goods on credit, and the actual delivery to a common carrier for the vendee, would vest the general property in the vendee, subject only to a conditional right of stoppage *in transitu*, if the vendee should become insolvent before the arrival of the goods. But no question of this kind arises, and therefore the evidence shows conclusively, that all the goods were the property of Sutton, Griffiths & Co. at the time of the shipment and of the alleged loss. We therefore assume, for the purpose of discussing this question intelligibly, that they were the sole owners of the goods during their transit; that neither Blanchard, Converse & Co., the shippers and present plaintiffs, had any interest in the goods, or in their safe carriage and delivery, except what arises from the bill of lading itself; nor had Gaines & Co., the consignees at New Orleans, any interest in the goods, but only an authority from Sutton, Griffiths & Co. to receive the goods as their agents at New Orleans, and forward the same to them at Fort Smith, a distant point in the interior, to pay the freight, and take the suitable measures for so forwarding the goods.

It is proper, however, to state that the plaintiffs rely, not only upon the bill of lading, but upon certain receipts given by the defendants to the carters and truckmen by whom the goods were delivered at the vessel, and a count in the declaration is framed upon the contracts arising from these receipts. The fact stated in the case is, that in the first instance the defendants gave receipts for the goods, as goods received on board the St. Peters, for carriage to New Orleans, in good order, which were given up when the bill of lading was signed and delivered to the plaintiffs. We think, however, that these receipts can have no bearing in the case. Whatever were the terms in which they were expressed, they were given for a temporary purpose; when that was accomplished, they were taken up and cancelled,

and the bill of lading substituted for them, and that must be taken as expressing the final intentions of the parties. If the receipts did not vary from the bill of lading, they were immaterial; if they did, the bill of lading, as the latest expression of the will of the parties, supersedes and controls them, though till such bill of lading is given, the receipts are good evidence of the shipper's rights. *Craven* v. *Ryder*, 6 Taunt. 433. The shipper may always direct to whom the goods laden on board by him shall be deliverable; and even after the bill of lading is signed and handed to the shipper by the master, the shipper may alter the destination and direct the goods to be delivered to another consignee, unless the bill of lading has been delivered or forwarded to the consignee first named, or to some one for his use. *Mitchel* v. *Ede*, 11 Ad. & El. 888. *Ruck* v. *Hatfield*, 5 B. & Ald. 632. *Thompson* v. *Trail*, 2 Car. & P. 334.

We are then brought back to the question, supposing the defendants as shipowners are liable to somebody, for the alleged damage done to the goods, after the defendants became responsible, as carriers, for their safety, and before their arrival at the place of destination, whether by law the plaintiffs are entitled to bring this action and recover the damages actually sustained. This brings us to consider the nature of a bill of lading, under the law, modified by the custom of merchants, which may be now taken as part of the law of the land; whether it constitutes an express or implied contract; if so, between what parties, and what are the mutual rights and liabilities of such parties under the contract.

It seems to us well established that a bill of lading constitutes a written simple contract between the shipowner and the shipper, that is, the person who on the bill of lading appears to be the shipper, without words showing that he acts in a representative capacity binding the shipowner to the shipper, and subjecting him to the liabilities of a common carrier of goods by sea, for instance, to stow and keep the goods safely, and carry them to the place of destination mentioned, and deliver them to the shipper himself, or to a person named by him, or to the indorsee of such person, or, if the name be left blank, to a

person to be named afterwards, (with usual exceptions,) he or they (consignee or his assigns) paying freight, &c. ; and binding upon the shipper to pay freight to the shipowner, or his agent, at the rates stipulated, on delivery of the goods at the place of destination, if they arrive in safety, and the shipowners, by their agent, the master, are then ready to deliver them, on such payment being made or tendered.

The bill of lading does not contain express words importing promise, contract or stipulation ; but it contains words equivalent. It is an acknowledgment of the receipt of the goods, for the purpose of carriage, that they are received of A. B., the shipper, and in the absence of any such words as, " for account and risk of C. D." or " by order or for account of E. F.", the consignee, and in the absence of any terms describing the shipper as an agent, or stating the property to be in another person, no presumption can arise in favor of any other party. It is an admission on the part of the shipowner, that he has received the goods from the shipper, and that the possession came to him from the shipper ; that he is the owner, or has the power of an owner, and has a right to direct the destination of the goods, and has good right to contract with the shipowner for their safe carriage.

The obligation on the part of the shipowner is expressed in these words, after acknowledging the receipt of the goods, " and to be delivered in like good order and condition, at," &c. When a party, for a valuable consideration, receives the goods of another, and has the exclusive possession of them for a special purpose, and then declares that they are to be delivered, &c., it is a promise that he will do the act, or cause it to be done, because he alone has the custody of them and can do it ; therefore this is the necessary effect of the language used.

The general rule of law is expressed by Lord Loughborough, in delivering the opinion of the court of exchequer chamber in the case of *Mason* v. *Lickbarrow*, 1 H. Bl. 359. " A bill of lading is the written evidence of a contract, for the carriage and delivery of goods sent by sea, for a certain freight. It is a contract of bailment ; and in the usual form of the contract, the

undertaking is to deliver to the order or assigns of the shipper. By the delivery on board, the shipmaster acquires a special property," &c. " The general property remains with the shipper until he has disposed of it by some act sufficient in law to transfer the property. The indorsement of the bill of lading is simply a direction of the delivery of the goods."

In considering the nature and effect of a bill of lading, as an original written contract for the carriage of goods, it may be well to consider how far the construction and legal effect of this instrument may be affected by evidence *aliunde.*

In the case of *Bates* v. *Todd,* 1 M. & Rob. 106, it was held by Chief Justice Tindal, that evidence *aliunde* might be admitted to show, where a bill of lading had acknowledged the receipt of eight hundred and ninety bags, that seven hundred and ninety bags only were in fact shipped, and that the bill of lading was not conclusive. The learned judge held that, as between the original parties, the bill of lading was merely a receipt, liable to be opened by evidence of the real facts.

In *Berkley* v. *Watling,* 7 Ad. & El. 29, in a suit brought by the holder of a bill of lading, the goods, as by bill of lading, appeared to have been shipped by Watling. Evidence *aliunde* was admitted to show who was the real shipper. And in the same case, the court, by their remarks, intimated that if it had been shown that Watling, the shipper, was in fact the plaintiff's agent, or that Watling shipped them by his order, the case might have been different, implying that such evidence would be admissible.

Perhaps it is not necessary, in the present case, to determine how far, and to what extent, parol evidence would be admitted to control the meaning and intent of the parties, in the terms which constitute their agreement. But we think it is competent, as in case of a receipt, to control the amount received, as it is, even in case of an instrument under seal, in controlling the admission of the receipt of the consideration. And further, we think evidence *aliunde* is admissible to prove facts not inconsistent with the terms of the written instrument. As, for instance, where the bill of lading imports " shipped by A. B.," it

may be shown that A. B. was the agent of C. D., or that the goods were shipped by his order, or for his use, because not inconsistent with the fact, that the actual shipper did make the contract, and made it in his own name.

In discussing this question, therefore, and in deciding who was the proper party to bring this suit, it seems to us, that we may with propriety take into consideration the facts as stated in this case, in connection with the bill of lading, as competent evidence, not for the purpose of proving a parol agreement, different from that expressed in writing, or that the parties meant and intended something different; but to prove the relations in which they stood, and the circumstances by which they were surrounded, in order to give full effect to the terms of the instrument.

In resorting to the usual sources of information on this subject, the decisions of courts of law, we think it will appear that there has been much doubt and uncertainty, and perhaps some conflict of judicial opinion, upon the question who shall maintain the action against a carrier for damage to goods carried for hire. Sometimes it has been supposed to depend on the question, who is, at the time, the owner of the goods, for damage to which the action is brought; at others, great stress has been laid on the question, who was to pay the freight; and the question, who were the parties to the contract, and the nature of that contract, have not been sufficiently regarded.

In a very early case, before Lord Mansfield, *Davis* v. *James*, 5 Bur. 2680, which, however, was against a common carrier by land, the case seems to have been put on the right footing, that of original contract. It was placed on the ground that the defendants were liable for the consequences to the original consignors, whether the property was in them or not, because the carrier agreed with them to carry the goods safely, and the action was for the breach of that agreement.

But not long after, the case of *Dawes* v. *Peck*, 8 T. R. 330, came before the court, was much discussed, and has long been considered a leading case. It was there rather emphatically stated by Lord Kenyon, that the party in whom the legal

interest is vested is the proper party to an action against a carrier; "for he is the person who has sustained the loss by the negligence of the carrier; and whoever has sustained the loss is the proper party to call for compensation from the person by whom he has been injured." This was followed by many cases, decided on the same grounds, and recognizing the case of *Dawes* v. *Peck* as an authority. It is true, that was a case of carriage by land, where it is usual to pay the freight or price of carriage in advance, on booking the goods, at the wagon office, and where no bill of lading is usually given, and this perhaps may account for the difference.

Either yielding to the authority of this class of cases, or for some other causes, few cases are found in the books, at that time and for some years after, where the action against the carrier was brought by the shipper, even for goods carried by sea, where there was a bill of lading, and where it was stated in the bill of lading, that the goods were consigned to a person named. But we think this fact can easily be accounted for by the nature of the transaction. There is no doubt that the party, who was owner at the time, or becomes owner of the goods afterwards, by assignment of the shipper or otherwise, and who was consignee, indorsee of the bill of lading, or lawful holder of a bill of lading in blank, and who really sustains the damage, may maintain an action against the shipowner, not because he has any contract with him for the carriage, but because the shipowner has the goods lawfully in his possession; it has become his duty to carry them safely, and deliver them to the consignee, subject only to a lien for his freight; and if the consignee is ready to discharge that lien by a payment or tender of that freight, the refusal of the carrier to deliver the goods to such consignee is a breach of duty, and a wrong done him, for which an action, either in tort for the conversion, or in assumpsit upon the implied promise to perform such duty, may be maintained. So in all cases where it is shown that the consignor was the agent of the consignee, and shipped the goods for his account, or by his order.

But it does not follow, because a third party, not appearing

on the bill of lading, either as the principal for whom the shipper acted as agent, or as the owner of goods damaged by the breach of duty of the carrier, can maintain an action, that the shipper cannot maintain an action on his original contract.

One test question in such case seems often to have been, who is to pay the freight? and it has been supposed that the right to bring the action depends, to some extent, on determining this question. We suppose the question to have presented itself thus : The contract to carry, and the contract to pay freight for the carriage, are considerations for each other ; if therefore there is no contract on the part of the shipper to pay the freight, the promise on the other side is made on no consideration moving from him, the promise to him is *nudum pactum*, and no action lies. There would be much ground to sustain this conclusion, if the premises were sound. But we are of opinion that, upon the ordinary contract of shipment, manifested by a bill of lading, made by one party and accepted by the other, it is a contract in the nature of a deed poll, mutual obligations arise between the contracting parties, on the one side to carry the goods, and on the other to pay the stipulated compensation for that service; that these are mutual considerations for each other, and make them legal obligations on which actions will lie.

In the ordinary form of a bill of lading, there is no express stipulation on the part of the shipper to pay freight, but his liability results from having engaged the shipowner to take on board and carry the goods at his instance. This, we think, is well settled both upon principle and authority.

In point of fact, we think it seldom happens, in case of carriage of goods by sea, that the consignor does pay the freight, either in advance or ultimately, and this, perhaps, has led to a doubt, whether a shipper, without proof of other interest or property in the goods, is liable for freight. The reasons why a shipper does not often, in fact, pay freight are obvious.

In the first place, freight is not payable, unless the goods arrive at the place of destination. If they are lost by perils of the sea, whilst the owner stands to the loss of the goods, the carrier loses his freight. Freight is therefore seldom paid in advance.

Again, the carrier has a lien on the goods, which is commonly a much better security for his freight than the personal liability of the shipper or anybody else. The consignee, in paying the freight, to discharge this lien, discharges at the same time the liability of the shipper, and exonerates him.

And further, a bill of lading making the goods deliverable to a consignee or his order, contains a stipulation to this effect " he or they paying freight for the same." This is inserted for the benefit of the shipper, as if it were, " if or on condition that he or they pay the freight." Now, if a consignee or indorsee, holding and presenting such a bill of lading, requiring such a conditional delivery of the goods, receives the goods, without payment of freight precisely at the moment of delivery — as it would be difficult to know what the freight would amount to, until all the goods were out, and it would be inconvenient to require payment at the delivery of each bale — such acceptance of the goods, under such a claim, is evidence of a promise on the part of the consignee to pay the freight, upon which, if not rebutted by other proof, an action will lie. But this is to be regarded as a new and original cause of action, arising upon a demand and receipt of goods, subject to a lien, and received on such condition. *Cock* v. *Taylor*, 13 East, 399.

In an early case, it was held to be a good custom of merchants, that if a merchant abroad shipped goods to a merchant in London, and the master signed a bill of lading, the merchant in London should be liable for the freight. *Roberts* v. *Holt*, 2 Show. 443. It seems difficult to find any legal principle upon which a person can be charged by a contract to which he was neither party nor privy, by himself or agent, and which he has not, by his acceptance or other act, adopted or ratified ; and we believe that, as a legal authority, this case has not been followed. But it is one amongst the reasons tending to show why, for some cause, parties other than the shipper have usually paid the freight of goods carried by sea, and for which the usual bill of lading has been given by the master for the shipowners, and why there have been but few cases in which the question, who are the original parties to the contract created by the bill

of lading, has been considered. These considerations, we think, will account for most of the cases, in which actions have been held to lie, by persons interested, other than parties to the original contract of carriage.

But whatever doubts may have at times existed, it seems to be settled by authority, that an action will lie by the shipowner against the original shipper for freight on the original contract, where freight has not been received from some other party, or where the shipowner has not lost his right by some act or omis sion in his own wrong.

In the case of *Moore* v. *Wilson,* 1 T. R. 659, it was alleged in the declaration, that the carrier undertook to transport the goods " for a certain hire and reward, to be paid by the plaintiffs," who were the consignors. It was proved at the trial, that the consignee had agreed with the plaintiffs to pay for the carriage. It was insisted that this was a variance, the judge so held, and the plaintiff was nonsuit. On a motion for a new trial, Buller, J., who had ordered the nonsuit, admitted that he was mistaken in point of law ; and stated that, " whatever might be the contract between the vendee and the vendor, the agreement for the carriage was between the carrier and the vendor, the latter of whom was by law liable." And it was so held by the court.

The case of *Domett* v. *Beckford,* 5 B. & Ad. 521, was a suit by the shipowner against the shipper on a bill of lading, entered into by his agent, by which goods were shipped from Jamaica to London, to consignees named, " or to their assigns, paying freight," but delivered without receiving the freight, and the consignees becoming bankrupt, this action was held to lie against the shipper. It was a fact, however, in this case, that the shipper was owner.

*Strong* v. *Hart,* 6 B. & C. 160, was an action by a shipowner against the shipper, where the master had received a bill of ex- change for his freight, which bill of exchange was dishonored ; it was held, that if he took the bill instead of cash, of the con- signees, for his own accommodation, it was a payment which exonerated the consignors, but if he took the bill because he could not get payment in cash, the shippers would have been liable on their original contract.

The result is, that the contract for carriage is between shipper and shipowner, and that an action for damage to the goods, or nondelivery thereof, on the contract, must regularly be brought by the shipper; or if in fact he be acting as an agent for another person not named in the bill of lading, then by such principal, on the contract made in his behalf; and that where any action is held to lie, by any other person, for damage to the goods, it is through some derivative, incidental or collateral promise or duty, and not on the original promise and undertaking for their safe carriage.

But without reviewing all the cases, which are numerous, we think the subject has been much discussed, and put on its proper footing by several modern cases, the leading one of which is that of *Sanders* v. *Vanzeller,* 4 Ad. & El. N. R. 260, first adjudged in the queen's bench, on a special verdict, and afterwards in error in the exchequer chamber.   It was elaborately discussed, and almost every English case, bearing upon the question, was cited by counsel.   It was an action brought by a shipowner against the indorsee of the bill of lading, who had demanded and received the goods under and by virtue of such bill of lading. There had been an instrument of charter party not under seal, between the original shippers and the shipowners, to which reference for a particular purpose was had in the bill of lading; but it was decided, by a majority of the court, upon the effect of the delivery of the goods to the defendants as indorsees of the bill of lading, without reference to the contract of charter. It involved the question of the nature and effect of a bill of lading, and the contract created by it.   It was conceded by the counsel on both sides, that this instrument created an original contract between the shipowner and the shipper, the former to carry the goods, the latter to pay the stipulated freight.   And whenever a case was cited, suggesting any doubt on that subject, the judges, by their remarks, intimated, that whatever doubts may have before existed, the law must now be taken as so settled.   It was decided, that the action against the indorsee of the bill of lading, who had accepted and taken the goods without payment of freight, would not lie; not on the original

25 *

contract to pay freight, because the defendants were not parties to it; not on an implied contract, because the law raised no promise by implication against a consignee or indorsee of the bill of lading. It was conceded on all hands, that the acceptance of goods, under a bill of lading in usual form, " he or they paying freight," was a fact tending to establish a new and original promise to pay the freight, and from which such promise might be inferred, but it was an inference of fact only, capable of being rebutted or corroborated by other evidence, all which it would be proper to submit to a jury, to enable them to draw the inference. But it was held not sufficient to sustain the action in that case, because, as matter of evidence, it had not been submitted to a jury, but came before the court on a special verdict, where the court did not feel authorized to go beyond the facts actually found, or to draw any inference of fact from the evidence stated in the verdict. It turned on a legal distinction, narrow but well defined, between a fact from which the law implies a promise, and evidence, tending to prove a fact, from which, when proved to the satisfaction of a jury, a promise is implied by law.

But if neither consignee, indorsee of the bill of lading nor other party is liable for the freight, except by some agreement made or act done, after the original contract entered into, it seems to follow, as a necessary consequence, that by force of that original contract, the consignor or shipper is originally liable. And why, upon principle, should this not be so ? Suppose the shipowner, engaged and retained by the shipper in his own name, has carried the goods safely to the place of destination, landed them, and is ready to deliver them to the holder of the bill of lading, on payment of his freight; but neither the shipper, nor any one having a right under the bill of lading to receive them, is there, and a holder of the bill of lading, on account of the depreciation of the market value of the goods, or other cause, does not choose to pay the freight and receive the goods; has not the shipowner done his whole duty, performed his entire contract, and become entitled to his freight, by virtue of his contract; and is not the shipper, by force of his part of the contract, bound to pay it ?

It seems to be thus well established, that a bill of lading is a written simple contract, between a shipper of goods and a shipowner, the latter to carry the goods and the former to pay the stipulated compensation for that service. We have seen that by its original terms, or by any assignment or indorsement of it, it does not create any obligation on the part of the consignee named, or any assignee or indorsee, to pay the freight; but if either of these parties does become liable for freight, it is by some after act, or express or implied agreement. It follows, as a necessary legal consequence, that the shipper is bound to pay the freight.

But though we have considered it important to establish the point that the original shipper and consignor is liable to pay freight, because it establishes the privity of contract between these parties, and the mutuality of the contract, it is not the precise question in the present case.

It appears to us, that the true rule which must govern the present case, is laid down by Lord Ellenborough, in the case of *Joseph* v. *Knox*, 3 Campb. 320. That was an action by shipper against shipowner on a bill of lading, in which it was contended that the action would not lie, because the plaintiff did not appear to be the owner of the goods. But Lord Ellenborough held, that the action well lay, on the privity of contract established between the parties, by means of the bill of lading. The plaintiff was the party from whom the consideration moved, and to whom the promise was made. After such a bill of lading, the shipowner cannot say to the shippers, they have no interest in the goods, and are not damnified by the breach of contract.

The same rule, we think, was recognized and affirmed in the case of *Sargent* v. *Morris*, 3 B. & Ald. 277. The principle decided is this; that the original contract for carriage of goods by sea, is made between the shipowner and the shipper, and that by force of such contract, if the goods are not carried safely, an action lies by the shipper. The case was very much like the one under consideration, except that the action for damage done the goods was brought by the consignee, and not by the con-

signor and shipper. It was an action on the contract, to recover damage of the shipowner, caused by bad stowage and other negligence and misconduct. The goods were shipped by Bayo & Son, at Seville, and a bill of lading given by the master, making them deliverable to the plaintiff, in London, he paying freight. The court remark, that it was left equivocal upon the bill of lading, whether the goods were owned by the shipper or by the consignee; but that it appeared by other evidence that the goods were the property of the shipper, and consigned to the plaintiff for sale on the shipper's account. The plaintiff, on advice of the shipment, had caused the goods to be insured, paid premiums of insurance and freight. But the court decided that the consignee could not maintain the action; not on the contract, for he was not a party to it; nor as owner, because the property had not vested in him by an actual delivery; but that the action should have been brought in the name of Bayo & Son. And the court place their judgment on the ground that the shippers were the party with whom the contract of the shipowner was made, and who had the right to enforce it by an action. Abbott, C. J., drew the distinction between that case, which was for breach of the undertaking of the shipowner to carry safely, and a case where the goods have vested in the consignee, on which an action in another form might have been brought; and he remarks, " A transfer of the property is however very different from a transfer of the contract." Mr. Justice Bayley expressly puts it on the ground of special contract.

A similar rule had been previously adopted in the case of *Waring* v. *Cox*, 1 Campb. 369, before Lord Ellenborough, in a case where the plaintiff claimed as indorsee of a bill of lading, without proof that the indorser had paid value for the goods. Lord Ellenborough, in that case, said : " The right to stop goods *in transitu* is a personal right of the seller, and cannot be thus assigned to another. In this case the action, if maintainable at all, should have been brought, not in the name of the agent, but of the consignor himself." And the reporter (Campbell) adds, in a note : " In this case the promise contained in the bill of lading

was made, not to the plaintiff, but to a third person, viz. the consignor of the goods. The plaintiff was not privy to it, and there was no consideration for it moving from him to the defendant; for which reason a breach of it could afford him no cause of action."

In a recent case in the house of lords, it was decided, that where the property has vested in the consignee, it is proper for him to bring the action; yet, where the consignor has made a special contract for the carriage, he is liable for the freight, and may maintain an action against the shipowner, if the goods are lost or damaged whilst in his charge. Though that was a Scotch case, it was distinctly stated, that, upon this subject, the law of Scotland coincided with the English law. *Dunlop* v. *Lambert*, 6 Cl. & Fin. 600.

In that case, the lord chancellor, in announcing the opinion of the house of lords, after reviewing the authorities. said: " These authorities establish the proposition, that although, generally speaking, where there is a delivery to a carrier, to deliver to a consignee, he is the proper person to bring the action; yet if the consignor made a special contract with the carrier, the special contract supersedes the necessity of showing the ownership in the goods, and the consignor, the person making the contract with the carrier, may maintain the action, though the goods may be the goods of the consignee. 6 Cl. & Fin. 626, 627.

These determinations show, that though other persons may have derivative rights under a shipment, and bill of lading of goods shipped, yet they depend on different grounds and principles, from that of the original contract for carriage and the payment of freight.

It has sometimes been insisted, that a bill of lading is negotiable, like a bill of exchange, so that when the shipper has indorsed and delivered the bill of lading, his whole right and interest, as well in the contract as in the goods represented by it, is gone. Something like this has been suggested in some of the earlier cases, of *Lickbarrow* v. *Mason,* and others, but has never, we believe, received the sanction of judicial decision.

But it is now fully settled, that a bill of lading is not negotia

ble in the sense stated, so as to constitute a legal obligation be-tween the shipowner and the indorsee; though in many cases of the indorsement of the bill of lading, whilst the goods are in the possession of the carrier, of which the shipper is owner, or the goods have been shipped on his account, the effect is to transfer the right of possession connected with the right of property, in virtue of which, as before stated, the indorsee may have his remedy as owner. But, in law, the original contract of the car-rier, with the shipowner, is like any other right or chose in ac-tion ; it may convey an equitable interest, but cannot transfer the legal right of action.

This question came directly before the court in a compara-tively recent case, *Thomson* v. *Dominy,* 14 M. & W. 403, in which it was held, that a bill of lading is not negotiable like a bill of exchange, to enable an indorser to sue in his own name ; the effect of the indorsement being only to transfer the property in the goods, but not the contract itself. It was put expressly on the ground, that the original contract for safe carriage is with the shipper, and that contract is not transferable, although an indorsement of the bill of lading, by the consignee, who has in himself the right of property in the goods, will pass the right of property to the indorsee, with all the rights incident thereto. Since that decision, by an act of parliament, *St.* 18 & 19 Vict. *c.* 111, a bill of lading has in effect been made transferable by indorsement, so that an action may be brought upon it in the name of the indorsee. This statute, of course, cannot affect the law of America.

The legal conclusion to be drawn from this view of the na-ture and character of a bill of lading is, that these plaintiffs, as shippers named in the bill of lading, and with whom the original contract for safe carriage was made, have not ceased to be the party contracted with by the defendants, by directing the goods to be delivered to Gaines & Co. ; nor would they have ceased to be such party if the bill of lading had in terms made the goods deliverable to their own order, and they had indorsed it to Gaines & Co., or to any other person. The contract for safe carriage, on their promise to pay the freight, still remained a

legal and valid contract of the defendants; and if the beneficial interest in the damages to be recovered is in Griffiths & Co., the owners of the goods, whose agents and attorneys the plaintiffs were, and who made the contract of shipment by their authority and for their benefit, the plaintiffs must be deemed to be trustees for their employers, and will be accountable to them accordingly.

In the case of *Barker* v. *Havens*, 17 Johns. 23, an action was maintained by the shipowner against the shipper and consignor, for the freight of cotton, on the ground of the contract created by the bill of lading, and the stipulation therein for the payment of freight. The court, in their opinion, lay some stress on the fact, that the shipper was the owner of the goods, and the contract was for the carriage of his own goods. But it seems to be thus stated, not because he would not be liable on this contract, if the property was not in himself; but to enforce the duty of the master, when the goods are deliverable only on payment of freight, not to deliver the goods without payment of the freight, so as to exempt the consignor from liability on his contract, when the consignee or any other person is owner.

The only remaining question is, whether the action ought to have been brought by Griffiths & Co., the owners of the goods, for whose account and risk they were shipped. The facts are now clearly established, that Griffiths & Co. had bought and paid for the goods; that no right of stoppage *in transitu* ever existed or was ever claimed; that the plaintiffs made the shipment by the order and request of Griffiths & Co. and as their agents; that Gaines & Co., consignees at New Orleans, were merely the forwarding agents of Griffiths & Co., and that they had no property or interest in the goods. The contract of shipment, therefore, was made by the plaintiffs as the agents of Griffiths & Co., whose names were not mentioned. The question is not whether Griffiths & Co., as principals, might not maintain an action on a contract made for their account by their agent; but whether the plaintiffs, as the party actually making the contract, in the absence of any action brought by the principal, may not maintain the action.

It is quite certain, that if the plaintiffs had been called upon for the freight, in case it had not been paid by the consignee on delivery of the goods from the ship, it would have been no answer to say, and to prove that they acted as agents in making the contract. They were bound. *Higgins* v. *Senior*, 8 M. & W. 834.

The result of the cases, as laid down in Sergeant Shee's edition of Abbott on Shipping, 337, is this: " In the case of an express contract, evidenced by a bill of lading, the action may be brought by the shipper with whom the master contracted, or by the owner of the goods, whose agent the shipper was."

In the case of *Sargent* v. *Morris*, before cited, Mr. Justice Bayley says: " Now I take the rule to be this; if an agent acts for me and in my behalf, but in his own name, then, inasmuch as he is the person with whom the contract is made, it is no answer to an action in his name, to say that he is merely an agent, unless you can also show that he is prohibited from carrying on that action by the person on whose behalf the contract was made. In such cases, however, you may bring your action, either in the name of the party by whom the contract was made, or of the party for whom the contract was made." 3 B. & Ald. 280, 281.

In case of a written contract made by an agent in his own name, although the other party may prove the agency so as to charge the principal as the real party, yet he may also charge the agent. *Jones* v. *Littledale*, 6 Ad. & El. 486.

The same principle is stated in *Sims* v. *Bond*, 5 B. & Ad. 393. The court say: " It is a well established rule of law, that where a contract, not under seal, is made with an agent in his own name, for an undisclosed principal, either the agent or the principal may sue upon it; the defendant, in the latter case, being entitled to be placed in the same situation, at the time of the disclosure of the real principal, as if the agent had been the contracting party."

So in *Fragano* v. *Long*, 4 B. & C. 219, an action was brought in the name of the owner of the goods, to whom they were consigned, on the ground that the property was vested in him:

and he sustained an action, on the ground that the principal, though not known to the carrier, may sue on a contract made by his agent, although, as said by Bayley, J., there might have been some difficulty if the agents who made the contract had set up an adverse interest. So in New York. *Dow* v. *Cobb*, 12 Barb. 310.

The same principle was laid down, where a broker had made a purchase in his own name, for a principal not named; it was held that either might have the action. *Short* v. *Spackman*, 2 B. & Ad. 962.

It does not appear in the present case, that the owners of the goods have ever made any objection to the maintenance of this action by the plaintiffs. On the contrary, we understand that it was commenced and is prosecuted with their knowledge and consent, and for their benefit. And the court are of opinion that this action can be maintained by the plaintiffs, being the original shippers and consignors in the bill of lading, by force of the original contract for safe carriage, made by the defendants with them ; and it is not for the defendants to say that, upon a breach of that contract, the plaintiffs, with whom it was made, are not entitled to recover the damages, which are the direct and natural consequence of such breach of contract.

*Case to stand for trial.*

*S. Bartlett & H. Ritchie*, for the plaintiffs, besides some of the cases mentioned in the opinion, cited Beawes Lex Mercatoria, (5th ed.) 142 ; *Creery* v. *Holly*, 14 Wend. 26 ; *Covill* v. *Hill*, 4 Denio, 330 ; *Wolfe* v. *Myers*, 3 Sandf. 7 ; 1 Greenl. Ev. § 305 ; *Merian* v. *Funck*, 4 Denio, 110 ; *Amos* v. *Temperley*, 8 M. & W. 798 ; *Scaife* v. *Tobin*, 3 B. & Ad. 523 ; Atkinson on Shipping, 117 ; *Carter* v. *Graves*, 9 Yerg. 446 ; *Freeman* v. *Birch*, 1 Nev. & Man. 420 ; *Evans* v. *Marlett*, 1 Ld. Raym. 271 ; 1 Dane Ab. 475 ; *Griffith* v. *Ingledew*, 6 S. & R. 429 ; *Arfridson* v. *Ladd*, 12 Mass. 173 ; *Savage* v. *Rix*, 9 N. H. 269, 270 ; *Dutton* v. *Poole*, 2 Lev. 210 ; *Rippon* v. *Norton*, Cro. Eliz. 849, 881 ; *Levet* v. *Hawes*, Cro. Eliz. 619, 652 ; *Layng* v. *Stewart*, 1 W. & S. 222 ; *Lickbarrow* v. *Mason*, 2 T. R. 63 ; Story on Agency, §§ 155, 160, 396 ; *Stackpole* v. *Arnold*, 11 Mass. 29 ; *Doe* v. *Thompson*, 2 Fos-

ter, 217; 1 Amer. Lead. Cas. (1st ed.) 460; *Buffum* v. *Chadwick,* 8 Mass. 103; *Van Staphorst* v. *Pearce,* 4 Mass. 263; *Clap* v. *Day,* 2 Greenl. 307; *Piggott* v. *Thompson,* 3 Bos. & Pul. 147; *Commercial Bank* v. *French,* 21 Pick. 486; *Williams* v. *Millington,* 1 H. Bl. 81; Paley on Agency, *c.* 5; Addison on Con. (1st ed.) 782; Angell on Carriers, § 397; *Collins* v. *Union Transportation Co.* 10 Watts, 384.

*A. H. Fiske,* for the defendants, contended that delivery to a carrier, whether evidenced by a bill of lading or not, vests the property in the consignee, who ought therefore (except in the few special cases hereafter mentioned) to sue for any injury happening to the goods shipped; that the bill of lading is first to be looked to as the medium of the intent of the parties; that in the ordinary form of the bill of lading, (as in this case,) the property *prima facie* vests in the consignee, and he alone is entitled to sue; though if it appears by the bill of lading, or by extrinsic evidence, that the property described therein is shipped on account of the consignor, or at his risk, or he pays the freight thereon, or makes a special contract for carriage, then there is established a privity of contract between him and the carrier, and the contract of carriage is presumed to be with him, and he may sue; *Snee* v. *Prescot,* 1 Atk. 248; *Evans* v. *Marlett,* 1 Ld. Raym. 271; *Dawes* v. *Peck,* 8 T. R. 330; *Dutton* v. *Solomson,* 3 Bos. & Pul. 582; *Brown* v. *Hodgson,* 2 Campb. 36; *Fragano* v. *Long,* 4 B. & C. 219; *Potter* v. *Lansing,* 1 Johns. 215; *Griffith* v. *Ingledew,* 6 S. & R. 429; *D'Anjou* v. *Deagle,* 3 Har. & Johns. 206; *Grover* v. *Brien,* 8 How. 439; *Lawrence* v. *Minturn,* 17 How. 100; Morton on Vendors, 416; 1 Walford on Parties, 31 *& seq.; Lickbarrow* v. *Mason,* 6 East, 21, *note; Chandler* v. *Sprague,* 5 Met. 306; and that the only excepted cases are these: (1.) When the shipper or consignor pays the freight, or makes a special contract; 5 Bur. 2680; 1 T. R. 659; 3 Campb. 320; 6 Cl. & Fin. 600. (2.) When the consignor or shipper retains the property in the goods; 3 B. & Ald. 277; 5 B. & Ald. 350; 1 M. & Rob. 223. (3.) Where the consignor and consignee are both interested in the goods, as in case of bailor and bailee. 1 Nev. & Man. 420.